[Criminal No. 540.   Filed February 6, 1923.]

[212 Pac. 377.]

GEORGE FRALICK, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—UNDER STATUTE AN INSANE PERSON CANNOT BE PUNISHED FOR CRIME.—Penal Code of 1913, section 1264, providing that a person cannot be tried, convicted, or punished for a public offense while he is insane, is an announcement of the common law.

2. CRIMINAL LAW—MOTION TO HAVE QUESTION OF SANITY SUBMITTED RAISES QUESTION WHETHER EVIDENCE SUFFICIENT TO CREATE DOUBT AS TO SANITY.—The question presented upon a motion under Penal Code of 1913, sections 1264–1269, to have the sanity of defendant submitted to the jury, is not whether the defendant was at that time actually insane, but whether the evidence adduced in support of the motion was sufficient to give rise to a doubt in the mind of the court as to whether he is sane.

3. CRIMINAL LAW—MANDATORY UPON COURT TO SUBMIT QUESTION OF SANITY IF EVIDENCE BE SUFFICIENT TO CREATE DOUBT AS TO SANITY.—If the evidence adduced in the motion under Penal Code of 1913, sections 1264–1269, to have defendant's sanity submitted to the jury, and all other facts in possession of the court, are sufficient, when given their full probative force to create a doubt in

3. Time or stage in criminal proceedings where question of insanity of defendant may be determined by inquisition, see notes in 4 Ann. Cas. 393; Ann. Cas. 1916E, 424.

the mind of the court as to defendant's present sanity, it is the mandatory duty of the court to submit the question to a jury for decision.

4. CRIMINAL LAW — WHEN QUESTION OF INSANITY RAISED, TRIAL COURT MUST WEIGH EVIDENCE FOR OR AGAINST SUBMISSION OF QUESTION TO JURY.—Where the question of the present sanity of a defendant is raised by motion under Penal Code of 1913, sections 1264–1269, the court must weigh and consider all the relevant facts bearing thereon, whether offered to sustain the propositions of insanity or in opposition thereto.

5. CRIMINAL LAW—TRIAL COURT'S FINDING OF SANITY ARBITRARY WHEN EVIDENCE ADDUCED IN SUPPORT OF MOTION CREATES DOUBT OF SANITY.—The method of settling a preliminary question as to defendant's sanity where the question is raised by motion under Penal Code of 1913, sections 1264–1269, is left to the sound discretion of the trial court, but, if the only facts before him are to the effect that defendant is insane, his decision that defendant is sane is arbitrary and unreasonable.

6. CRIMINAL LAW—UNCONTRADICTED EVIDENCE HELD SUFFICIENT TO RAISE DOUBT AS TO SANITY.—Uncontradicted evidence adduced in support of a motion under Penal Code of 1913, sections 1264, 1265, to have defendant's sanity submitted to jury before trial, in prosecution for murder, *held* sufficient to raise doubt as to defendant's sanity and to require submission of the question to the jury.

APPEAL from a judgment of the Superior Court of the County of Graham. Frank B. Laine, Judge. Judgment reversed and case remanded.

Mr. W. K. Dial and Mr. Walter Lee Johnson for Appellant.

The Attorney General, for the State.

ROSS, J.—Defendant was convicted of murder in the first degree and sentenced to death. He appeals from the judgment and the order overruling his motion for new trial. At the time he is alleged to have committed the crime (December 19, 1921) he

6. Right of jury to abide by presumption of defendant's sanity as against uncontradicted evidence to the contrary, see note in 24 L. R. A. (N. S.) 545.

See 16 C. J., pp. 98, 789.

was, and had been for some four months, an inmate of the Industrial School, an institution for the confinement of neglected, dependent, incorrigible, and delinquent children under the age of eighteen years.

The deceased, Walter W. Layton, was an employee of such institution, and on the day he was killed was in charge of a squad of some eight or nine of its inmates, including the defendant, employed in clearing some ground of mesquite, preparatory to cultivation. The deceased had just sharpened defendant's ax, and upon handing it to him warned him not to strike it upon rocks, and stated if he did he would "kick hell out of him," or words to that effect, and resumed his seat upon a stump. Defendant, getting behind deceased, without warning, struck him on the head with the butt of the ax, and as the deceased was falling struck him the second time. Defendant took from deceased's person the latter's revolver and pressed the muzzle thereof against his body, but did not shoot him. He then suggested to his companions that they escape. He left the scene alone, but was soon thereafter apprehended. Layton, lingering a short time, died from the effects of the wounds inflicted by defendant. At the preliminary trial defendant was represented, by appointment by the court, by the same counsel that represented him on his trial, and they represent him here.

The indictment charging him with the crime of murder was returned and filed in the court on December 27, 1921. He was arraigned December 29th. Demurrer to the indictment was filed December 31st, and, being overruled, he pleaded not guilty. On January 19, 1922, the case was set for trial February 20, 1922. February 7th it was reset for March 20th. On application of defendant's counsel, made February 21, 1922, commissions to take the depositions of Julia Fralick, of Urbana, Illinois, and C. W. Demos,

of Chattanooga, Tennessee, were issued; and on
the third day of March a commission to take the
deposition of Dr. E. D. Foss of Muskegon, Michigan,
was issued.

Up to this time the local judge, W. R. CHAMBERS,
presided, but when the case was called for trial on
March 20, 1922, Honorable FRANK B. LAINE,
Superior Judge of Greenlee county, was on the bench,
and remained the presiding judge throughout all sub-
sequent proceedings.

When the case came on for trial, March 20, 1922,
the defendant's counsel moved the court that the
question of defendant's sanity be submitted to a
jury, in pursuance of section 1264 et seq. of the
Penal Code, basing such motion upon the depositions
of Julia Fralick, C. W. Demos and Dr. E. D. Foss.
The action of the court upon such motion is evidenced
by the following minute entry:

"Comes now E. K. Dial, Esq., and Walter Lee
Johnson, Esq., counsel for the defendant, and present
to the court their motion to submit the question
of sanity to special jury. The court being now
fully advised in the premises, and, having duly
considered the matter, it is ordered that said motion
be, and it is hereby, denied."

The trial was proceeded with upon the merits, and
the defendant, under his plea of not guilty, introduced
in evidence the depositions above referred to bearing
upon the question of his sanity. He made no other
defense than that of insanity. The refusal of the
court to impanel a jury to try the question of de-
fendant's present sanity upon the motion and the
depositions in support thereof, before proceeding to
the trial on the merits of the case, is the principal
ground of complaint on appeal.

Section 1264 of the Penal Code provides that a
person cannot be tried, convicted or punished for a

public offense while he is insane. This announcement
of our statute is but the common law as it has always
been. The next section provides that, if a doubt
arises as to the sanity of the defendant before trial,
or during the trial, or when the defendant is brought
up for judgment, the court must order the question
as to his sanity submitted to a jury, and the trial or
pronouncing of judgment must be suspended until
the question is determined by their verdict. Section
1266 describes the procedure in such trial. Section
1267 requires that, if the jury find the defendant sane,
the trial must proceed; if he is found insane, the
trial is suspended, and the defendant is committed
to the insane asylum. Section 1269 provides the
method to be pursued toward securing his trial should
he become sane.

The question presented to the court upon the mo-
tion was not whether the defendant was at the time
actually insane, but whether the evidence adduced
in support of the motion was sufficient to give rise
to a  doubt in the mind of the court as to whether
he was sane. If the evidence and all other facts
in the possession of the court, when given their full
probative force, were sufficient to create a doubt in
the mind of the court as to his sanity at that time,
it was under the statute, the mandatory duty of the
court to submit the question to a jury for decision.

As was said in *People* v. *Kirby*, 15 Cal. App. 264,
114 Pac. 794:

"  . . . Whenever and however up to and including
the time of judgment a doubt of the present and
presumed sanity of a defendant in a criminal case
is created in the mind of the court having him in
charge, it becomes the duty of that court, with the aid
of a jury especially empaneled for that purpose, to
inquire into the then mental condition of the defend-
ant . . . for the purpose of ascertaining if the de-
fendant rightly comprehends the nature and object

of the proceedings pending against him, and is mentally competent to make a just and rational defense."

In 16 C. J. 789, section 2015, the rule is thus stated:

" . . . Both at common law and under some statute, if the court either before or during the progress of such trial, from observation or from the pleading or suggestion of counsel, has facts brought to its attention which raise a doubt as to the present condition of defendant's mind in this respect, the question should be determined before another step is taken."

Under statutes like ours, and states from which ours were doubtless taken, it is said:

"The question whether a doubt exists is one that addresses itself peculiarly to the sound discretion of the trial court. To it must be presented the reasons for asking that such an inquiry be had, or of its own motion the court may institute the investigation, and to its sound judgment is left the decision of the wisdom of having it." *State* v. *Peterson,* 24 Mont. 81, 60 Pac. 809.

See, also, *People* v. *Hettick,* 126 Cal. 425, 58 Pac. 918; *People* v. *Geiger,* 116 Cal. 440, 48 Pac. 389; *People* v. *Kirby, supra.*

It will be noted that the statute, and decisions thereunder, contemplate that the doubt of the defendant's sanity may arise either from the court's own observation or from evidentiary facts presented to the court. When the question is raised by motion, as was done in this case, the court must weigh and consider all the relevant facts bearing thereon, whether offered to sustain the proposition of insanity or in opposition thereto. If it appear that the effort is made merely for the purpose of avoiding or delaying the trial on the merits, or that defendant is feigning insanity, or if the showing is not from credible sources and substantial, it, in all probability,

will fall short of arousing any doubt in the mind
of the court.

But what is to be said where the evidence on the
question is substantial, and not inherently improbable,
and all one way—not contradicted? Can the court
say, "Yes; all the evidence we have is to the effect
that this boy is probably insane; his father is an
epileptic and he had a sister who suffered from de-
lusions and committed suicide in one; but no doubt
exists in ·my mind of his sanity"? The record in
this case seems to be of that character, as is shown
from the condensed statements of depositions, as fol-
lows:

The mother, Julia Fralick, testified: That the de-
fendant's father was subject to catalepsy or epilepsy,
and that he had fits, or spells, quite often, sometimes
two or three a month; that the defendant was born
in May, 1904, and only seventeen years of age; that
he did not speak a word until he was six years old,
and never spoke plainly; did not go to school until
he was seven, and learned slowly; did not develop
mentally; was melancholy at times and again was
very happy in disposition; quit school when he was
in the fifth grade; had two operations; one the re-
moval of a growth between his eyes, when he was
eight years old, and one the removal of his tonsils,
when he was eleven or twelve years old; was daring
in his actions and did not realize danger; had a
great deal of trouble with his playmates and was dis-
obedient at times; would run away from home and
be gone for weeks, and sometimes for months, and
upon his return would say that he did not know
where he had gone or what had become of him until
he would wake some morning or night; he had
been away from home three different times during
the last six or eight years; his memory was never
good; could not remember things in school, and

when he was away from home he could not remember
where he had been, or anything that had happened
to him; that he was injured when he was twelve
or thirteen years old by being struck on the left side
of the head with the butt of an air gun, and knocked
unconscious; he seemed to be worse after that; that
of nine children born to her all were bright except
George and his second sister, Ruth, who committed
suicide.

C. W. Demos testified: That he was a brother-in-
law, having married George's sister; had known
George four or five years and considered him a dull,
weak-minded boy, always getting into mischief
and denying same when he knew the facts were
against him; he would be sullen several days at a
time, and was continuously running away from home;
seemed to be undeveloped for his age; do not believe
he was unconscious of what he did, but do positively
believe he did not discriminate; had no ambition, no
desire to play games or sports with boys of his age;
seemed to be an irresponsible boy, having traits of
character of an infant rather than fifteen or sixteen
years of age; would steal and blame it on others; have
known George's father six years; during this period,
on an average of every two weeks, his mind would be-
come blank and he would be entirely out of his head;
following this, for a period of forty-eight hours he
would take epileptic fits, which would last from six
to ten hours; afterwards he would be out of his head
and dangerous for about two days; this has occurred
regularly and is occurring at the present time; his
sister Ruth committed suicide about six months
after her marriage; she was continuously suffering
delusions and was afraid that somebody was going
to harm her.

Dr. E. D. Foss testified: That he was a physician
of fifteen years' practice, residing at Muskegon,

Michigan; knows George Fralick and his father; attended George in November, 1918, at which time he had a very severe attack of influenza, from which it took him a long time to recover; attended his father, who was subject to very severe attacks of influenza, a number of times; knows the physical and mental condition of both father and son; father's mental condition was subnormal and sluggish; the condition of George was mentally bad; was very high-strung, especially after an attack of influenza; was known as an incorrigible; from the family history—that is, from the history of the father, mother and sister— George was mentally subnormal and probably insane at the time he left Muskegon, and most certainly by this time; would say also that there was a homicidal tendency in the family from the sister's history; sister Ruth committed suicide about four years ago; she was about twenty years of age and engaged to marry; her fiancé was stricken with the influenza and died; shortly thereafter Ruth committed suicide. It is my opinion that George was insane at the time he left here (Muskegon), and that the entire family history is that of an insane family.

In *People* v. *West,* 25 Cal. App. 369, 143 Pac. 793, the court used this language:

"And finally, as to the showing required to make it the duty of the court to submit the question of sanity to a jury, there is no discretion left in the court when a doubt arises as to the sanity of the defendant. And ordinarily, at least, if there are statements under oath of a credible person or persons that the defendant is insane, a doubt is or should be raised as to the defendant's sanity, and the question must be submitted to a jury. The only contingency is: Does a doubt arise? If information comes, through a proper source and through proper channels, that the defendant is insane, or if, through observation and personal inspection, the information is disclosed to the court, a jury must be impaneled to

pass upon the mental condition of the accused. *Marshall*·v. *Territory* (1909), 2 Okl. Cr. 136, 101 Pac. 139; *People* v. *Ah Ying,* 42 Cal. 18; *Freeman* v. *People,* 4 Denio (N. Y.), 9, 47 Am. Dec. 216.''

It is hardly reasonable to justify the court's refusal in this case to submit the question of the defendant's sanity to a jury, upon the ground that its opportunity to observe the actions and conduct of the defendant enabled it to determine he was sane enough to care for his defense and understand the proceedings against him, notwithstanding the showing made by the depositions. The record shows that the judge who presided at the trial was not the judge who arraigned the defendant, or took his plea, or was present at any other proceeding prior to the day the case was called for trial. From an inspection of the record, in the absence of a contrary showing, we are compelled to conclude that the first time the judge who tried the case saw the defendant was on the morning of the 20th of March, when the case came on for trial. The court convened at 9 o'clock A. M., of that day, and the attorneys for defendant requested some time in which to examine the depositions before proceeding with the trial. The court recessed until 11 o'clock. It reconvened at 11:15, and immediately passed upon the motion, and refused to submit the issue of defendant's present sanity to a jury. At most, the court's observation could not have exceeded two hours and fifteen minutes, and, as defendant had been arraigned and had pleaded prior thereto before Judge CHAMBERS, it is not unreasonable to assume that the court heard not a word from him; simply saw him as he sat beside his attorneys and as he came into and went out of the courtroom. The order denying the motion fails to set forth any reason, such as observation, investigation, or otherwise, as the basis of such order.

What was said of the record in *Youtsey* v. *United States,* 97 Fed. 937, 38 C. C. A. 562, may be said of this record:

"The record before us is silent as to how the court satisfied itself of the sanity of the accused, in the face of the showing made by the petition and accompanying affidavits, or whether the objection was entertained and decided in any way. The issue presented by the petition and motion thereon . . . involved the substantial rights of the accused. If the petition truthfully described the then condition of the mind and memory of the plaintiff in error, grave doubt must arise as to whether he was a fit subject for trial."

It may be said that the showing upon motion was of facts too remote to raise a doubt. The facts shown in the depositions, if true, were not of a temporary or fleeting mental derangement, but of a character organic and permanent in their nature. If they were not present when the motion was ruled upon, it would have been an easy matter for the state's attorney, by the affidavits of the superintendent, employees and inmates of the Industrial School, to have so shown. As before stated, there was no counter-showing.

The Attorney General cites several cases from California, from which state our statute was taken, holding that it lies within the sound discretion of the trial judge as to whether or not a separate trial of the issue of present sanity should be granted. In all these cases a counter-showing to the application for a separate trial was made, or the court had ample opportunity to observe the actions and conduct of the defendant and draw its own conclusions therefrom. In *People* v. *Kirby, supra,* the denial of the motion was expressly based upon the fact "that the trial court had ample opportunity to, and did, as it was its duty, observe and note the defendant's

mental condition from time to time, and in particular on the date when his present insanity was suggested.'' In *People* v. *Keyes,* 178 Cal. 794, 175 Pac. 6, counter-affidavits were filed, and it was held the showing was not sufficient to create a doubt in the mind of the judge, and the refusal to submit defendant's sanity to a jury was not an abuse of discretion.

We find no case where the defendant's sanity was brought to the attention of the court ''by statements under oath of a credible person, or persons, that the defendant is insane'' (*Marshall* v. *Territory,* 2 Okl. Cr. 136, 101 Pac. 139), holding that such statements are not sufficient, when not disputed, to give rise to a doubt as to defendant's sanity, and requiring its submission to a jury.

We recognize that the method of settling the preliminary question as to whether there is a doubt of defendant's sanity is left to the sound discretion of the trial court. If, however, the only facts he has before him are to the effect that defendant is insane, his decision that defendant is sane, we think, would be arbitrary and unreasonable. And, since the record fails to show that the court could have acted, after ample opportunity for observation, or that he considered anything other than the deposition submitted in support of motion, it seems to us the overruling of the motion was not the exercise of sound discretion, but was arbitrary and unreasonable.

What we have said in passing on this question must be understood as applying solely to the state of the facts we have before us, and not generally. We have not intended, by anything said, to indicate an opinion as to defendant's sanity, for that question is not involved. The only question is as to whether the undisputed and uncontroverted facts presented to the court on that question were sufficient to raise

a doubt in the mind of the court, and we hold they were sufficient. Having come to this conclusion, it is unnecessary for us to take up and dispose of other assignments made by the appellant.

The judgment of the lower court is reversed and the case remanded, with directions that further proceedings be taken therein not inconsistent with this opinion.

McALISTER, C. J., and LYMAN, J., concur.