289 P.2d 187

**STATE of Arizona, Appellee,**
v.
**Samuel STRACUZZI, Appellant.**
No. 1070.

Supreme Court of Arizona.
Oct. 31, 1955.

Houston & Nihan, Tucson, for appellant.

Robert Morrison, Atty. Gen., Norman H. Whiting, Asst. Atty. Gen., for appellee.

LA PRADE, Chief Justice.

The appeal herein is from a judgment finding the defendant-appellant guilty of murder in the first degree with sentence of life imprisonment imposed.

Simultaneously with the filing of the information charging the offense the county attorney filed a motion, under Section 44–1701, A.C.A.1939, seeking an order for a mental examination of the defendant to determine whether he was then insane, or mentally defective to the extent that he was then unable to understand the proceedings against him or to assist counsel in his defense. The motion was granted and the order made. After a hearing on this issue the court found defendant to be *unable* to understand the nature of the proceedings against him and ordered defendant committed to Arizona State Hospital "until the proper officer of said hospital is of the opinion that defendant is able to understand the proceedings against him and to assist counsel in his defense". Three months later the defendant as a patient was discharged from the hospital as being able to understand the proceedings against him and to assist counsel in his defense. Whereupon the county attorney, following the procedure of Section 44–1701, supra, again requested the court "that another hearing be held to determine the defendant's mental condition". The order was forthcoming and the court appointed experts to examine defendant. A hearing was conducted by the court at the conclusion of which the court ordered that defendant "be committed to the State Hospital for further treatment".

Eleven months later there was again filed with the clerk of court a new certificate of discharge releasing defendant from the State Hospital. The county attorney did not request a new court hearing to determine defendant's then mental condition after commitment, and no hearing was held by the court under Section 44–1701, supra, and no findings of fact or judicial determination made concerning the defendant's then mental condition. Nevertheless the court ordered the case set down for trial which resulted in the verdict and judgment under consideration.

By appropriate assignments of error defendant has challenged the authority of the court to put him to trial without there first having been a legal determination adjudging him to be sane.

It is to be noted that the rule contemplates that under certain circumstances an examination of defendant's mental condition shall be undertaken before trial to

315

determine whether a defendant shall be put to trial. The rule, Section 44–1701, supra, specifically provides that if on such examination the court

"* * * decides that the defendant through insanity or mental deficiency is not able to understand the proceedings or to assist in his defense it shall take proper steps to have the defendant committed to the proper institution. * * *"

So much of this rule was complied with, resulting in the commitment referred to. The rule then provides that

"* * * If thereafter the proper officer of such institution is of the opinion that the defendant is able to understand the proceedings and to assist in his defense, he shall report this fact to the court which conducted the hearing. * * *"

This procedure was followed by the officer of the State Hospital in his report. The rule then provides that

"* * * If the officer so reports, *the court shall fix a time for a hearing to determine whether the defendant is able to understand the proceedings and to assist in his defense.* This hearing shall be conducted in all respects like the original hearing to determine defendant's mental condition. If after this hearing the court decides that the defendant is able to understand the proceedings against him and to assist in his defense it shall proceed with the

trial. If, however, it decides that the defendant is still not able to understand the proceedings against him or to assist in his defense it shall recommit him to the proper institution." (Emphasis supplied.)

No attempt was made to comply with this portion of the rule. The county attorney and the court both took cognizance of the rule and applied it at the time the defendant was first released by the hospital authorities. Why they thought it was not necessary to follow this outlined procedure at the time the defendant was released on the second occasion after he had been recommitted is not explained.

The excuse now offered for not securing a legal determination of defendant's mental capacity to stand trial is that defendant did not demand it, thereby waiving his rights to such a determination. This argument is not tenable. The defendant at the time he stood trial was under the disability of the judgment theretofore made that he was insane or mentally deficient to the extent that he was not able to understand the proceedings or assist in his defense. It is the policy of our law that a person can not be tried, convicted or punished for a public offense while he is insane. Fralick v. State, 25 Ariz. 4, 212 P. 377.

State v. Voeckell, 69 Ariz. 145, 210 P.2d 972, 976, cited by the State as holding that it is not error to proceed with the trial of a criminal case without first disposing of insanity proceedings theretofore initiated,

does not contain such a general holding and is not applicable in this case. In that case an insanity proceeding had been initiated under Section 8–301, A.C.A.1939, being the general statute looking toward the commitment of insane persons, and which proceeding was still pending and undisposed of at the time the defendant was about to be put to trial. Before trial the court conducted a hearing following the provisions of Section 44–1701, supra, to determine the defendant's sanity. It was then pointed out that

" * * * The proceedings under the provisions of Art. 3, Chap. 8, Sec. 8–301, supra, furnish no greater protection to defendant than proceedings under Art. 17, Chap. 44, Sec. 44–1701 et seq. * * *"

We held that the fact that a legal determination had been made prior to trial finding the defendant to be sane was sufficient.

We hold that in view of the fact that defendant had been adjudged insane he could not be tried and convicted until this disability had been removed by a judgment establishing sanity following the procedure explicitly set forth in the rule, Section 44–1701, supra, and that the court was without authority to put him to trial.

Since a new trial must be ordered it is well that we should take cognizance of one of the many claimed errors assigned so as to preclude any error in this respect on a new trial. Over defendant's objection the court admitted into evidence the hospital records, progress reports, doctor's decisions and opinions, and recorded communications of defendant to members of the medical staff. It is claimed that these records and communications contained hearsay statements, and that the communications from patient to doctor in the course of treatment were privileged, citing Section 44–2702, subsection 4, relating to privileged communications, which insofar as applicable here provides that:

"A physician or surgeon can not, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

The trial judge was of the opinion that this section had no application to the confidences exchanged between a patient and doctor at a time when the patient was confined in a public institution, and that the records of the State Hospital were admissible under the rule set forth in Section 23–305, A.C.A.1939, making certain public records admissible in evidence. This section reads:

"The records required to be made and kept by a public officer of the state, county, municipality or of any body politic, and copies thereof certified under the hand and seal (if there be one) of the legal custodians of such records, and the declarations and protests made and acknowledgments taken by notaries public, and certified copies of their records and official papers, shall be received in evidence by the courts of the

state as prima facie evidence of the facts therein stated."

The statute making certain public records admissible in evidence was prompted by the rule of expediency of accepting hearsay testimony of public officers in certain instances. Mutual Benefit Health & Accident Ass'n v. Neale, 43 Ariz. 532, 33 P.2d 604; Douglass v. State, 44 Ariz. 84, 33 P.2d 985. By the provisions of this section it is provided that records that may be received in evidence as prima facie evidence of the facts therein stated are "the records required to be made and kept by a public officer * * *." This question now presents itself—what records are required to be kept by the superintendent of the State Hospital? The law relating to the State Hospital for the Insane, its creation, management, duties of officers, etc., is contained in the Laws of 1941, Chapter 44; see Section 8-204 et seq, 1952 Cumulative Supplement. Section 8-217 in part provides that the superintendent shall once a year submit a report of the activities of the State Hospital to the board, which shall include among other things:

"* * * 1. an account of patients received, conditionally discharged, and discharged, voluntary patients treated, and out-patient services rendered; 2. methods of treatment used and the results thereof; 3. a complete employment and personnel record; 4. the condition of existing equipment; 5. recommendations for improvement of the institution; and, 6. such other matters as may be required by the board or deemed advisable by the superintendent to present a complete picture of the condition and activities of the hospital."

An analysis of this section forces us to the conclusion that there is and was no statutory requirement on the part of the officers or medical officers of the State Hospital to make and keep the documents herein referred to, i. e., patient's progress reports, results of consultations of medical staff, doctor's opinions and declaration of defendant as a patient. They are not public records within the purview of this section relating to the admissibility of certain records into evidence. See: Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893, 895; Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756.

Defendant's plea was not guilty by reason of insanity at the time the offense was committed. The evidence that was submitted, over defendant's objection, from the records of the hospital, contain countless recorded observations and medical decisions and opinions of the attending doctors, all of which was hearsay and much of which was prejudicial to defendant. Defendant being denied the right of cross-examination as to all such evidence had no opportunity of portraying the true facts. Such procedure is essentially wrong and is judicially frowned upon where the Anglo-American System of Evidence is followed. See: Douglass v. State, supra, quoting approvingly from the work of Dean Wigmore on Evidence.

We do not deem it necessary to treat all of the assignments of error. The pronouncements herein made will undoubtedly obviate some of the procedural difficulties that were encountered in the previous trial and of which complaint is made in other assignments. We do not anticipate that they will arise again.

For the reasons herein stated the judgment is reversed with directions to grant a new trial.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.