459 P.2d 328

**The STATE of Arizona, Appellee,**

v.

**Lonnie Alfonso CASTONE, Appellant.**

**No. 2 CA–CR 145.**

Court of Appeals of Arizona.
Division 2.
Oct. 10, 1969.

Rehearing Denied Nov. 19, 1969.
Review Denied Jan. 13, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Robert Martin, Nogales, for appellant.

KRUCKER, Chief Judge.

Appellant, defendant below, Lonnie Alfonso Castone, was informed against for the crime of forgery, three counts, in violation of A.R.S. § 13–421. He pleaded not guilty to all counts. However, on November 16, 1967, the County Attorney dismissed Count Three of the information, and the defendant, present in court and represented by counsel, entered a plea of guilty to Counts One and Two.[1] The court entered an order suspending the imposition of sentence and placing the defendant on probation. A petition to revoke probation was filed December 27, 1967, heard and granted. The defendant was sentenced to the Arizona State Prison for a term of not less than eight nor more than ten years. After commencement of sentence, defendant moved to vacate same. The trial court denied the motion on the grounds that it lacked jurisdiction to hear the matter. Defendant appeals from that determination.

Defendant has been a mental patient for many years in both Arizona and Minnesota institutions. His last hospital admittance was in March, 1967, to the Arizona State Hospital. He was discharged in May, 1967. The medical reports presented with the motion to vacate show that defendant is a chronic schizophrenic, paranoid type, with sociopathic tendencies. In particular, his paranoid is highly delusional; he believes he is an undercover narcotics agent for the C. I. A. and that he fakes his condition to get inside jobs in prison. At the time of his discharge, he was receiving large dosages of Thorazine and was unconditionally released, although a letter attached to the motion indicates he was not returned to civil competency.

The transcript of the hearing on defendant's plea reflects the following colloquy:

"THE COURT: I am asking you. Is your plea Guilty or NOT GUILTY?

A I guess guilty.

MR. HAYTHORNEWHITE: I would like the record to show, your Honor, that I have not instructed the defendant to plead guilty. I have told him the circumstances under which we are here this morning. I have not instructed him to plead guilty.

THE COURT: I want you either to plead guilty or not guilty, without any guessing or any equivocation. You have been in court on many occasions and you know—what is your plea? Guilty or not guilty?

1. This was the result of a "plea bargain."

A I have taken his recommendation. I plead guilty.

THE COURT: I don't want any equivocation. I don't want you to say you're doing what Mr. Haythornewhite, Mr. Alikes, or Mr. Rios told you.

A I do what he say, I guess—I plead—

THE COURT: Mr. Castone, I am asking you once more. And I want you to give me a 'yes' or 'no'. What is your plea? Guilty or Not Guilty?

A Guilty, sir."

\* \* \* \* \* \*

Defendant presents three challenges to the court's refusal to vacate the judgment:

(1) The court erred in failing to have a Rule 250 hearing to determine defendant's ability to stand trial once the question of his sanity was before the court and in taking defendant's plea without such a hearing.

(2) Defendant did not voluntarily plead guilty.

(3) The sentence of the court was not within the court's jurisdiction as it banished the defendant from the county.

 As to the first, in State v. Brown, 9 Ariz.App. 323, 451 P.2d 901 (1969), we acknowledged the problem in determining just when and to what extent trial courts have continuing jurisdiction to modify sentences and judgments subsequent to imprisonment. We recognized that the Arizona Supreme Court has held that Rule 60 (c) gives the trial court jurisdiction, short of appellate perfection, but that the limits of its broad catch-all provision, Rule 60(c) (6), must be decided on a case by case basis.

Rule 250, Rules of Criminal Procedure, 17 A.R.S., requires that the trial court hold a hearing when, in the court's discretion, a hearing is necessary to determine whether a defendant is mentally able to stand trial and aid in the preparation of his defense. State v. Buchanan, 94 Ariz. 100, 381 P.2d 954 (1963). This does not mean that the defendant must request the hearing. State v. Stracuzzi, 79 Ariz. 314, 289 P.2d 187 (1955). The statute places that duty on the court, not the accused. It is the declared policy of this State that a person cannot be tried, convicted or punished for public offenses while he is insane. Stracuzzi, supra; Fralick v. State, 25 Ariz. 4, 212 P. 377 (1923).

 We believe that a trial judge generally has "jurisdiction" to consider post imprisonment whether there was reasonable cause to give defendant a Rule 250 hearing. In the instant case, however, we agree with the trial court's determination that it had no "jurisdiction" to decide whether to hold a Rule 250 hearing at this time. We believe that the defendant here falls under the rule of State v. Brown, supra, because defendant cannot generate Rule 60(c) jurisdiction for reconsidering a matter already raised below.

At the hearing on sentencing, the trial court made it perfectly clear that he was aware of the defendant's long-standing mental condition and his institutionalization and that he nevertheless believed defendant was sane. We quote the following:

"MR. HAYTHORNEWHITE: I would like to say a few words, your Honor. I am convinced after several months of being in contact with Mr. Castone, who has been incarcerated during all this period in the County Jail, that Mr. Castone, although he admittedly has a lengthy criminal record, is a man who does have further need for medical treatment. He has been in the State Hospital in Minnesota and in the State Hospital in Arizona as late as the spring of this year. I am convinced that Mr. Castone is in physical condition and most probably in mental condition that requires that he have further treatment. My feeling is that the law, society, and everybody else would be best served in trying to get Mr. Castone medical treatment such as might be of some benefit to him and perhaps keep him from any further activities—conduct of the type he has been involved in the past, and I would most

earnestly beseech the Court to cause Mr. Castone to be sent back to the hospital—that he was an out-patient, you will recall—to the State Hospital for further treatment such as might be of some further help to him and cause him to become adjusted. I think he can do this. It has been effective upon him in the past and I think it can again. I think this would serve Mr. Castone and society best.

THE COURT: Mr. Castone, is that the way you pronounce your name?

A Yes.

Q I am going to follow the recommendations of your attorney and because of your mental background, apparently although *I am not convinced that you are not legally insane; in other words, I feel that you are answerable to this charge,* but because of your background as a mental patient in Arizona and in Minnesota, I am going to suspend imposition of sentence in this case for a period of twelve years on certain conditions.

(Emphasis added)

A Yes, sir.

THE COURT: And you had better keep them in mind: The first is that you return to the Arizona State Hospital and request further treatment by the hospital and that you follow any recommendations that they require of you in the way of out-patient treatment during the period that they prescribe. * * * "

\* \* \* \* \* \*

We also note that the medical records support the trial court's conclusion that there were no grounds to believe defendant was anything but sane. Defendant's discharge summary from the Arizona State Hospital states, in part:

"REFERRAL: This patient will be asked to return to the outpatient clinic He is being given a complete discharge at this time because he is not only in good contact but will return to Outpatient Clinic, however, his sociopathic tendencies are such that he warrants a complete discharge for *if he should get into trouble with the law, he is competent and the law will have to deal with him at that time;* if he is on a conditional discharge he could be brought back to the hospital for any law infraction that might incur, when in reality he is considered competent. This has been a Team Unit decision." (Emphasis added)

█ Defendant's second contention is that he did not voluntarily plead guilty. Although this question was not raised in the motion to vacate, we believe appellate consideration is appropriate since proof of the contention would invalidate the conviction. Defendant in particular points to the transcript of the hearing on the entry of defendant's plea. We agree with defendant's counsel that the judge had difficulty in getting defendant to plead. However, we agree with the trial judge, and the records show, that the defendant finally did enter his plea voluntarily with full understanding of its consequences.

█ Defendant's last contention is that the court had no "power" to banish him from the county as a condition of probation. We do not believe that it is necessary to decide this question in order to affirm the trial court's revocation of probation. The record shows, in a document entitled "Official Statement of County Attorney," that probation was· revoked both because of defendant's return to Santa Cruz County and because he attempted to pass another bad check. This latter reason being sufficient, and the document so reciting, being signed and approved by the trial court and filed with the court, we believe there was no choice for the trial court but to revoke defendant's probation.

Judgment affirmed.

HATHAWAY and HOWARD, JJ., concur.