941 P.2d 240

STATE of Arizona, ex rel., Charles L. MILLER, Director, Department of Transportation, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the County of Maricopa, the Honorable Ruth H. Hilliard, a judge thereof, Respondent Judge,

A. Paul STEPHENS, Sr. and Jane Doe Stephens, husband and wife; A. Paul Stephens, Sr. a married man, as his sole and separate property; A. Paul Stephens, Jr., a married man, as his sole and separate property; A. Paul Stephens, Jr. and Jane Doe Stephens, husband and wife; Elizabeth Jane Stephens, as her sole and separate property; First Interstate Bank; Arrowhead Section 30 Corporation, an Arizona corporation; Skunk Creek Properties, Inc., an Arizona corporation, Real Parties in Interest.

No. 1CA–SA 96–0314.

Court of Appeals of Arizona, Division 1, Department C.

May 8, 1997.

Grant Woods, The Attorney General by James R. Redpath, Joe Acosta, Jr., and George E. Mariscal, Assistant Attorneys General, Transportation Section, Phoenix, for Petitioner Phoenix.

Meyer & Vucichevich by Rad L. Vucichevich and Stanley Z. Goodfarb,Phoenix, for Real Parties in Interest Stephens Phoenix.

Bell Law Office by Leonard M. Bell, Scottsdale, and Streich Lang by Dan M.

Durrant, Phoenix, for Real Parties in Interest First Interstate Bank Phoenix.

## OPINION

THOMPSON, Presiding Judge.

Can a property owner introduce an Arizona Department of Transportation (ADOT) appraisal and portions of a stipulated agreement as an admission against interest on value after a partial taking? We find such evidence is barred as evidence of compromise under Arizona Rule of Evidence 408 if not already statutorily precluded by Ariz.Rev. Stat.Ann. (A.R.S.) § 12–1116(J).[1] Relief granted.

### I. JURISDICTION

Petitioner ADOT urges us to accept special action jurisdiction to address the trial court's denial of two of its *motions in limine.* The motions sought to preclude an appraisal review and valuation approval (the Appraisal) prepared by an ADOT employee and the stipulation agreement (the Agreement)[2] between the property owners and ADOT.[3] Admission of the Appraisal and Agreement at trial, ADOT claims, would result in reversible error.

ADOT partially condemned real party in interest Stephens's[4] property in Arrowhead Ranch for highway construction in February 1987. Recognizing the magnitude of this condemnation, our supreme court stated: "[A]DOT's exercise of eminent domain against the condemnees in these proceedings is the largest in Arizona history and will result in at least 9 separate condemnation trials...." *State ex rel. Miller v. Filler,* 168 Ariz. 147, 148, 812 P.2d 620, 621 (1991) (addressing another evidentiary issue on special action). Six years after *Filler* and ten years after the condemnation, six of those cases still await resolution—including Stephens's case.

Special action relief is reserved for those instances where there is no other equally plain, speedy or adequate remedy and is appropriately granted on pure questions of law where the issue is a matter of first impression and of statewide importance; this is one of those cases. *See Orme School v. Reeves,* 166 Ariz. 301, 303, 802 P.2d 1000, 1002 (1990); Arizona Rules of Procedure for Special Actions 1.

### II. ISSUES

We grant review of the following evidentiary issues:

1. Whether the Appraisal and Agreement are precluded from use at trial by Ariz. R.Evid. 408 (Rule 408) as evidence of compromise or an offer to compromise.

2. Whether the Appraisal and Agreement are precluded from use at trial under A.R.S. § 12–1116(J) as evidence of a stipulation for immediate possession or to prejudice ADOT.

We review legal questions *de novo. Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

### III. FACTUAL AND PROCEDURAL HISTORY

The facts before us are undisputed. ADOT is the plaintiff in multiple lawsuits arising from condemnations in the Arrowhead Ranch area. On January 12, 1987, a stipulated agreement for immediate possession was reached between ADOT and some of the property owners, including Stephens. Pursuant to the Agreement, the signatory property owners agreed to make no objection to "ADOT's initiation, maintenance and prosecution of condemnation actions...." ADOT agreed to seek immediate possession and to deposit $30,795,000 as the "value estimated by ADOT to be the fair value of the fee interest in the Property." The Agree-

---

1. A.R.S. § 12–1116(J) controls the introduction of stipulation agreements and related evidence at any subsequent trial on value.

2. ADOT's motion did not focus on the "Agreement" itself, but rather on information contained in Exhibit C to the Agreement which states the number of square feet in each parcel and makes an appraisal based on price per square foot.

3. We refer to these documents collectively as "the Appraisal and Agreement."

4. We refer to real parties in interest Stephens as Stephens and refer to the other real parties in interest as "property owners."

ment provided that the property owners could withdraw the funds deposited.

The value estimated by ADOT was supported by Exhibit C to the Agreement; the bases for Exhibit C were the 1986 appraisal and the resulting January 9, 1987 appraisal review by ADOT employee Mike Chierighino (Chierighino).

On February 13, 1987, ADOT initiated condemnation proceedings in superior court. ADOT took immediate possession of a portion of Stephens's property around Beardsley Road and 59th Avenue.

■ The only viable issue for trial is the value of the property and the property owners' damages. Each party plans to offer expert testimony at trial on the value of the land. ADOT's recent valuations are lower than the amounts indicated in the Appraisal and Agreement.[5] Therefore the property owners seek to introduce the Appraisal and Agreement as evidence relevant to value; they claim that these documents are "admissions against interest"[6] by ADOT.

ADOT made *motions in limine* to preclude the Appraisal and Agreement. In support of its motions, ADOT introduced Chierighino's sworn affidavit that appraisal reviews are generally done for two purposes: (1) as a basis for the acquisition offer, and (2) to set the deposit amount for immediate possession. Chierighino's sworn statement says that his January 9, 1987 appraisal review was specifically prepared for the purposes of making an offer and setting the deposit amount.

The trial court found the Appraisal and Agreement admissible in its October 30, 1996 minute entry, which reads in pertinent part:

As to Plaintiff's Motion in Limine re. State's Deposit and Chierighino Appraisal, the Court notes that all parties agree that the amount of the deposit is not admissible. As to the issue of whether the review appraisal prepared by Chierighino dated

1/9/87 and the Summary and Distribution of ADOT Values dated 1/12/87 are admissible, the State seeks to preclude these documents based on ARS 12-1116(J) and seeks to preclude any witness from testifying about any figures included in those documents. The Defendants argue that the values included in these reports are admissible as the State's determination of value per ARS 28-1865 now (J), then (I) and, therefore, as an admission against interest under Rule 801(d)(2), Rules of Evidence.

The Court finds that the statutory determination of value is admissible as an admission against interest. Only the valuation figures are admissible, however.

IT IS ORDERED allowing into evidence the schedule of values from the 1/12/87 agreement.

Following this ruling, ADOT filed the special action petition now before us.

## IV. DISCUSSION

■ The Arizona Constitution requires "just compensation" be paid to property owners prior to a taking. Ariz. Const. art. 2, § 17. "Just compensation" puts the property owner in the position he would have been in if no taking had occurred. *Filler*, 168 Ariz. at 149, 812 P.2d 620. "Just compensation" in partial takings is measured by (1) the fair market value of the property actually taken and (2) the diminution of the value of the remaining property. *Id.*; A.R.S. § 12-1122(A). "Fair market value" is the price a willing buyer would pay and a willing seller would accept. *Defnet Land & Inv. Co. v. State ex rel. Herman*, 103 Ariz. 388, 389, 442 P.2d 835, 836 (1968).

ADOT asserts two distinct bases supporting preclusion of the Appraisal and Agreement: (1) A.R.S. § 12-1116(J), and (2) Rule

---

5. For example, ADOT's recent appraisals value Stephens's land, parcel 7-4064, at $4.50 a square foot. The Appraisal and Agreement valued it at $6.00 a square foot. Compensation and damages accrue as of the date of the summons and the land's actual value on that date is the measure of compensation and damages. A.R.S. § 12-1123(A).

6. The property owners have termed this an "admission against interest"; we refer to it, as does Rule 801(d)(2), as an admission by party opponent. Rule 801(d)(2) defines statements which are not hearsay; Rule 804(b)(3) concerns the hearsay exception for statements against interest when the declarant is unavailable.

of Evidence 408, which pertains to evidence of settlement negotiations.

Property owners argued to the lower court that: (1) the appraisal report was statutorily required under A.R.S. § 28–1865(J)[7] to support the price for acquisition and therefore is a party admission under Rule 801(d)(2); (2) California law formed the basis for Arizona eminent domain law and, property owners argue, would have allowed for admission of the appraisal under a similar statute; (3) the evidence was not introduced under A.R.S. § 12–1116(J) and therefore, the prohibition is irrelevant; and (4) Rule 408 is inapplicable.

### 1. Statutory Preclusion under A.R.S. § 12–1116(J)

ADOT maintains that both A.R.S. § 12–1116(J) and Rule 408 preclude the Appraisal and Agreement. Property owners claim that because no evidence was ever "introduced" pursuant to A.R.S. § 12–1116(J), the prohibition is irrelevant.

A.R.S. § 12–1116 is entitled "Actions for condemnation; immediate possession; money deposit" and details the procedure whereby immediate possession may be taken of condemned property. A.R.S. § 12–1116(J) reads:

No stipulation which is made nor any evidence which is introduced pursuant to this section shall be introduced in evidence or used to the prejudice of any party in interest on the trial of the action.

The statute *explicitly precludes* the use of *either* the stipulation or evidence introduced pursuant to the stipulation. Property owners assert that (1) A.R.S. § 12–1116(J) is inapplicable because it is the exhibits and not the Agreement itself which property owners wish to introduce; and (2) because the stipulation agreement happened privately and without a judicial hearing the protections of the statute no longer apply.

 To apply the property owners' interpretation would be to read the statute too narrowly. We find that the stipulated agreement for immediate possession is a

"stipulation" covered under the statute and Chierighino's appraisal review is "evidence" produced to show probable damages in court or used to effectuate that stipulation. Furthermore, we agree that any use of the Appraisal and Agreement at the trial on valuation would be highly prejudicial to ADOT.

### 2. Compromise Evidence under Rule 408

Rule 408 of Evidence reads, in part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.

 We find that the Appraisal was prepared either: (1) for the purposes of negotiating a stipulation between ADOT and the property owners to receive immediate possession without court intervention; or (2) to provide a court with evidence to determine probable damages after application for immediate possession under A.R.S. § 12–1116(J). Rule 408 precludes the evidence in, at least, the former situation; A.R.S. § 12–1116(J) surely precludes the evidence in the latter situation.

Rule 408 precludes more than the "offer" to compromise; conduct and statements made in the pursuit of a settlement are also precluded. The Appraisal by Chierighino falls squarely within the scope of "conduct and statements" because it was done to effectuate either the stipulation or a court determination for immediate possession.

In *Ramada Dev. Co. v. Rauch*, the Fifth Circuit Court of Appeals upheld the trial court's exclusion of an architect's report

---

7. A.R.S. § 28–1865(J) (Supp.1996) requires the ADOT Director to have an appraisal report justifying the economic basis for the condemnation of any property for transportation purposes valued at over $2500. In 1987 this section was A.R.S. § 12–1865(I).

which detailed the investigation into alleged defects in a hotel built by Ramada for Rauch, on the basis that Rule 408 precluded its admission. 644 F.2d 1097, 1106–07 (5th Cir. 1981). After reviewing Rule 408, the court concluded that the architect "was commissioned by Ramada to prepare a report that would function as a basis of settlement negotiations regarding the alleged defects in the motel … that could then be discussed in monetary terms in the negotiations." *Id.* at 1107.

The Court of Appeals found the architect's report was not within the "otherwise discoverable" exception of Rule 408 because "such an exception does not cover the present case where the document, or statement, *would not have existed but for the negotiations ....*" *Id.* (emphasis added). That court further stated "[t]he rule does not indicate that there must be a pretrial understanding or agreement between the parties regarding the nature of the report." *Id.* We find that the architect's report in *Ramada Dev. Co.* is substantially similar to the Appraisal by Chierighino.

In *Berthot v. Courtyard Properties, Inc.*, a letter from plaintiff was excluded under Rule 408 where there was testimony that the letter allowed defendants a financial "credit" on their debt solely to get matters settled quickly. 138 Ariz. 566, 568, 675 P.2d 1385, 1387 (App.1983). Here, Chierighino's affidavit states the purpose of the Appraisal was for offer and deposit purposes, both of which fall under the purview of Rule 408.

### 3. California Law

Property owners indicate that, because Arizona's current eminent domain statutes were based on earlier California statutes, we should follow old California case law interpreting these outdated California statutes which allowed appraisals in evidence at trial.[8] We disagree for the following reasons.

First, it must be noted that California has long since changed its statute to explicitly exclude appraisal reports or other statements made in connection to a deposit or withdrawal of funds. *See* California Code of Civil Procedure (C.C.P.) § 1255.060. The current California statute explicitly says "nor shall such a report or statement and summary be considered to be an admission of any party." C.C.P. § 1255.060(b).

Far from being nearly identical statutes, as the property owners claim, a comparison of the relevant sections from Arizona and California shows clear differences. A.R.S. § 12–1116(J) states:

No stipulation which is made nor any evidence which is introduced pursuant to this section shall be introduced in evidence or used to the prejudice of any party in interest on the trial of the action.

The old California statute read:

(a) The amount deposited or withdrawn pursuant to this chapter shall not be given in evidence or referred to in the trial of the issue of compensation.

We read the old California statute as more limited than A.R.S. § 12–1116(J) and note that it completely fails to address anything outside the actual amount of the deposit or withdrawal. The Arizona statute precludes not only the stipulation itself from being introduced but also "evidence which is introduced pursuant to this section." The Arizona statute even refers to the "prejudice" that may beset a party against whom such interim value estimates are introduced at trial on the issue of final valuation.

We decline to adopt an outdated rule from another jurisdiction when its statute is not even similar to our own. Further, we agree with the California Commission's policy-based comment that the new rule precluding appraisals ensures that the state will not make inadequate deposits to protect itself

---

8. California has case law, prior to the 1975 Code amendments, allowing the admission of appraisal reports. *See People v. Cowan,* 1 Cal.App.3d 1001, 81 Cal.Rptr. 713 (1969) (holding that it was reversible error to deny property owner opportunity to call state appraiser who appraised the property when state had relied on appraisal in determining the deposit for the condemned property); *People v. Douglas,* 15 Cal.App.3d 814, 93 Cal.Rptr. 644 (1971). Both of these cases have been explicitly overruled by the new statute.

and find it equally persuasive here in Arizona.[9]

### 4. A.R.S. § 28–1865

■ Property owners next argue the Appraisal was conducted as statutorily required by A.R.S. § 28–1865(J) to justify ADOT's acquisition of the properties, and is therefore a party admission not excluded by Rule 408. The only evidence supporting the assertion that the Appraisal is, in fact, the A.R.S. § 28–1865(J) memorandum is an ADOT employee's answer to a convoluted deposition question.[10]

■ We find that even if the A.R.S. § 28–1865 appraisal constitutes an "admission" under Rule 801(d)(2), its status as an admission merely obviates a hearsay objection. Even if the Appraisal contained "admissions" under Rule 801(d)(2), they remain inadmissible as settlement matters under Rule 408. "Admissions" made in settlement offers are not admissible for policy reasons under Rule 408. Rule 801(d)(2) does not trump Rule 408. We are unpersuaded that the Appraisal by Chierighino is the A.R.S. § 28–1865(J) review, but we do not find that

it would make a significant difference in the result here if it were.[11]

Finally, we determine that as a matter of policy when an agency is required to take steps to protect public funds, as here in requiring analysis of the financial worth of property, the agency should not be punished by being subject to the admission of that document at trial. *See United States v. Two Tracts of Land,* 412 F.2d 347, 350 (2nd Cir. 1969), *cert. denied, sub nom. Sailors Haven Fire Island, Inc. v. United States,* 396 U.S. 906, 90 S.Ct. 222, 24 L.Ed.2d 183 (1969) (appraisal required for federal funding not admissible in determining damages at trial).

### V. CONCLUSION

For the above stated reasons we reverse the trial court's ruling that the Appraisal and Agreement are admissible.

GRANT and VOSS, JJ., concur.

---

9. The Law Revision Commission Comment to the 1975 Addition to C.C.P. § 1255.060 states in part:

> [T]he purpose of [the new changes are] to encourage the plaintiff to make an adequate deposit by protecting the plaintiff from the defendant's use of the evidence upon which the deposit is based in the trial on the issue of compensation. If such evidence could be so used, it is likely that the plaintiff would make an inadequate deposit in order to protect itself against the use at the trial of evidence submitted in connection with the deposit. . . .

10. To this end property owners also claim that an A.R.S. § 28–1865(J) report is admissible under the theory that "what a public officer does pursuant to a statutory obligation is admissible, except cases of statutory exclusion or confidentiality." In support of this theory property owners cite *Killingsworth v. Nottingham,* 18 Ariz.App. 356, 501 P.2d 1197 (1972). Ariz.R.Civ.P. 44(a) provides that records of public officials "shall be received in evidence as prima facie evidence of the facts therein stated." Arizona cases addressing Rule 44(a) and its predecessors hold that "[t]he statute making certain public records admissible in evidence was prompted by the rule . . . of expediency of accepting hearsay testimony

of public officers" and that the government documents *are still subject to the general rules of admissibility. State v. Stracuzzi,* 79 Ariz. 314, 318, 289 P.2d 187, 190 (1955) (superseded by statute as stated in *State v. Bradley,* 102 Ariz. 482, 433 P.2d 273 (1967)) (state mental hospital records in defendant's murder trial); *Douglass v. State,* 44 Ariz. 84, 95, 33 P.2d 985, 989 (1934) (military discharge forms were hearsay and not admissible to show mental defect); *Mutual Benefit Health & Accident Ass'n v. Neale,* 43 Ariz. 532, 547–49, 33 P.2d 604, 610–11 (1934) (industrial commission records not admissible to show how injury occurred). Furthermore, as property owners concede this rule does not apply where there is a statutory exclusion, as in A.R.S. § 12–1116(J).

11. Mr. Helmandollar was ADOT's former Assistant Chief Right-of-Way Agent from 1983 to 1988, and its Chief Right-of-Way Agent from 1989 to 1994. When asked at deposition "[W]hether or not a determination of value was made pursuant to the statute, the determination that was made is based upon Mike Chierighino's review appraisal as concurred in by the chief right-of-way agent, the assistant chief right-of-way agent, and the manager of appraisals?" Helmandollar replied "I believe you are right."