**RAN KEN, INC., Appellant,**

v.

**Cindy SCHLAPPER, Appellee.**

No. 03–96–00346–CV.

Court of Appeals of Texas, Austin.

Jan. 15, 1998.

James P. Wallace, Soules & Wallace, Austin, for Appellant.

Philip Durst, Wiseman, Durst, Tuddenham & Owen, Austin, for Appellee.

Before POWERS, JONES and KIDD, JJ.

JONES, Justice.

The opinion issued herein on October 30, 1997, is withdrawn, and the following is filed in lieu thereof.

Cindy Schlapper, appellee, sued Ran Ken, Inc. ("Ran Ken"), appellant, for wrongful discharge. At trial, the jury found that Schlapper was fired from her job for the sole reason that she attempted in good faith to find out whether she was being asked by Ran Ken, her employer, to perform an illegal act. Based on the verdict, the trial court rendered judgment that Schlapper recover from Ran Ken $143,000 in actual and exemplary damages, plus interest and court costs.

On appeal, Ran Ken argues that the trial court erred in: (1) the submission and wording of jury question two, asking whether Schlapper was discharged for inquiring about the legality of an act Ran Ken ordered her to perform; (2) failing to instruct the jury on the definition of "sole reason"; (3) awarding tort damages for a cause of action sounding in contract; (4) submitting a jury question asking whether Ran Ken acted willfully and maliciously; and (5) admitting testimony regarding attorney's fees. Ran Ken also argues that the evidence is legally and factually insufficient to support: (1) the finding that Schlapper was discharged solely for inquiring whether she was being asked to perform an illegal act; (2) damages for emotional distress; (3) exemplary damages; and (4) attorney's fees. In three cross-points, Schlapper argues the trial court erred by: (1) failing to submit a proposed jury question; (2) excluding her statutory demand letter; and (3) applying "sole reason" as the standard of causation in question one. We will address only Ran Ken's first point of error regarding the jury question asking whether Schlapper was discharged for inquiring into the legalities of an act; we will also address Schlapper's first and third cross-points. We will sustain Ran Ken's first point and reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Ran Ken is a corporation that runs a chain of restaurants and bars, including Chelsea Street Pubs. Ran Ken holds a "mixed beverage permit," which authorizes its Texas restaurants to possess and sell mixed beverages, wine, and beer for consumption on the licensed premises. *See* Tex. Alco. Bev.Code Ann. § 28.01 (West 1995). Cindy Schlapper was employed by Ran Ken as its advertising director. An "at will" employee, Schlapper was responsible for the advertising and promotion of the corporation's twenty-four stores.

In 1994, a nationwide contest was held among the managers of Ran Ken's various Chelsea Street Pubs. The contest was conducted in conjunction with Remy–Amerique, a New York liquor company. Remy–Amerique holds a "nonresident seller's permit," which authorizes it to ship liquor into Texas through sales to permittees who are authorized to import liquor into the state. *See* Tex. Alco. Bev.Code Ann. § 37.01 (West 1995). Pursuant to the rules of the contest, the manager of the restaurant that sold the most margaritas containing Cointreau, a Remy–Amerique product, won a free trip to Las Vegas. The first-prize winner was the manager of a restaurant in Odessa, Texas.

In January 1995, Robert Gilleland, Ran Ken's vice-president for Chelsea Street Pubs, asked Schlapper to prepare an invoice so Ran Ken could be reimbursed for the trip to Las Vegas. Corporate officials of both Ran Ken and Remy–Amerique were "concerned"

that, under Texas law, Remy–Amerique might be prohibited from paying for the trip. As a result, Gilleland instructed Schlapper to prepare an invoice for $631.80 to be sent to Remy–Amerique and to indicate on the invoice that it was for table-top advertising or "table tents."[1] Unknown to Schlapper, Remy–Amerique knew the true basis of the invoice. Knowing Ran Ken had not prepared any table tents, and believing that, under Texas law, a liquor company could not pay for the cost of a promotion, Schlapper told Gilleland she had a problem with creating such an invoice. He recommended she speak with Howard Crohn, Ran Ken's senior vice-president. When Schlapper spoke with Crohn, he told her she must prepare the invoice. She expressed her concern about generating such a document and asked him, "Exactly what are the legalities of doing this?" Schlapper testified that after she made this comment Crohn became very angry and responded that it was none of her concern. Schlapper did not further investigate the actual legality of the invoice. Rather, in an effort to appease Crohn, she created a blank invoice on the computer for someone else to complete and gave it to Crohn. Another employee eventually completed the invoice. When it was finally sent to Remy–Amerique, the invoice stated that it was for "promotional materials."

About a month later, Schlapper was terminated. Schlapper sued Ran Ken for wrongful termination, contending she was fired for the sole reason that she refused to perform an illegal act, and for attempting in good faith to find out whether she was being asked to perform an illegal act. Schlapper contended that her preparation of the invoice would have violated sections 108.05 and 108.06 of the Texas Alcoholic Beverage Code, section 32.32 of the Texas Penal Code, and/or Title 18, section 1341 of the United States Code.[2]

The trial court submitted two liability questions to the jury. The first question, based on *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985), stated: "Did Ran Ken, Inc. discharge Cindy Schlapper for the sole reason that she refused to perform an illegal act?" The jury answered "no" to this question. Question two stated: "Did Ran Ken, Inc. discharge Cindy Schlapper for the sole reason that she attempted in good faith to find out whether she was being asked to perform an illegal act?" The jury answered "yes" to question two. Based on the jury's answer to question two, the trial court rendered judgment in favor of Schlapper for actual damages, exemplary damages, court costs, and interest. Ran Ken appeals.

## DISCUSSION

In its first point of error, Ran Ken argues the trial court erred in submitting question two to the jury, because it does not support a cause of action under Texas law. We must first decide whether the cause of action implicit in question two, by prohibiting an employer from discharging an at-will employee when the employee inquires about or investigates the lawfulness of an act, expands the supreme court's holding in *Sabine Pilot.*

The long-standing rule in Texas is that employment for an indefinite term may be

---

1. Although the cost of the trip to Las Vegas was only $630, Schlapper was instructed to create the invoice for $631.80 to "make it look real."

2. Sections 108.05 and 108.06 of the Texas Alcoholic Beverage Code state:

   **Section 108.05. Allowance for Advertisement or Distribution**

   No manufacturer or distributor, directly or indirectly, or through a subsidiary, affiliate or agent, employee, officer, director or firm member, may pay or make an allowance to a retail dealer for an advertising or distribution service.

   **Section 108.06. Prizes and Premiums**

   No manufacturer or distributor, directly or indirectly, or through a subsidiary, affiliate or agent, employee, officer, director or firm member, may offer a prize, premium, gift, or other inducement to a dealer in or consumer of brewery products.

   Tex. Alco. Bev.Code Ann. §§ 108.05, .06 (West 1995).

   The Texas Penal Code provision states: "A person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit for himself or another." Tex. Penal Code § 32.32(b) (West 1994). The United States Code provision, which prohibits mail fraud, is similar in content to section 32.32(b). *See* 18 U.S.C.A. § 1341 (West Supp.1997).

terminated at will and without cause. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 724 (Tex.1990); *East Line & R.R.R. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888). The legislature has created a number of restrictions and exceptions to the at-will doctrine. *See Winters*, 795 S.W.2d at 724 & n. 1. The Texas Supreme Court, however, has created only one exception to the general rule, allowing a cause of action for wrongful termination when the employee has been discharged for the sole reason that the employee refused to perform an illegal act. *See Sabine Pilot*, 687 S.W.2d at 735.

█ In *Sabine Pilot*, the employee was a deckhand for Sabine. He was instructed that one of his duties was to pump the bilge water out of the boat on which he was working into the water. *Id.* at 734. After seeing a posted notice stating that such action was illegal under federal law, and after calling the coast guard to confirm this fact, the employee refused to comply with his employer's order. As a result, he was terminated. *Id.* In response, the supreme court created a "very narrow" exception to the employment-at-will doctrine: an employee cannot be terminated if the sole reason for the termination is the employee's refusal to perform an illegal act that would subject the employee to criminal liability. *Id.* at 735. The *Sabine Pilot* exception applies only if the plaintiff was forced to choose between committing a criminal act and being discharged. *See Winters*, 795 S.W.2d at 724; *see also Willy v. Coastal States Management Co.*, 939 S.W.2d 193, 197 (Tex.App.—Houston [1st Dist.] 1996, writ granted); *Berry v. Doctor's Health Facilities*, 715 S.W.2d 60, 62 (Tex.App.—Dallas 1986, no writ). Since *Sabine Pilot*, the supreme court has continued to stress the narrowness of the exception. *See Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex.1995); *Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex.1993); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991).

Schlapper contends question two is not an expansion of *Sabine Pilot.* Schlapper relies on *Johnston v. Del Mar Distributing Co.*, 776 S.W.2d 768 (Tex.App.—Corpus Christi 1989, writ denied), as support for the trial court's submission of question two. In *Johnston*, the plaintiff's work duties included packaging items for shipment. *Id.* at 769. On one occasion, her supervisor instructed her to package a semi-automatic weapon for delivery, but to label the package "fishing gear." The plaintiff contacted the Bureau of Alcohol, Tobacco, and Firearms about whether this act was legal. She was terminated "a few days after" her inquiry. *Id.* The Corpus Christi court did not discuss the actual legality of mislabeling the package, but stated:

> [S]ince the law recognizes that it is against public policy to allow an employer to coerce its employee to commit a criminal act in furtherance of its own interest, then it is necessarily inferred that the same public policy prohibits the discharge of an employee who in good faith attempts to find out if the act is illegal.

*Johnston*, 776 S.W.2d at 771. The court further held that, when the employer discharges the employee for contacting a regulatory agency to determine whether a requested act is illegal, the employee must prove she had a good faith, reasonable belief that the requested act might be illegal. *Id.* at 772. The employee need not prove the requested act was actually illegal. *Id.*

█ We disagree that question two, based on *Johnston*, is not an expansion of *Sabine Pilot.* An employee alleging a *Sabine Pilot* cause of action must prove that the sole reason for her discharge was her refusal to perform an illegal act. *Sabine Pilot*, 687 S.W.2d at 735. Necessary to the employee's proof is evidence that the act could have resulted in criminal penalties against the employee. *See id.* The element of criminal penalties must be conclusively proved, even though the trial judge must determine whether a statute carrying a criminal penalty is involved. *See id.* at 736 (Kilgarlin, J., concurring). Thus, an employee who has not yet refused to perform a requested act or who cannot show that performance of the requested act would result in criminal penalties against her will not meet the burden of proof necessary to succeed in a *Sabine Pilot* cause of action.

In the present case, however, the jury refused to find in answer to question one that Schlapper's discharge resulted from her refusal to perform an illegal act, and question two does not require actual illegality.[3] In essence, therefore, Schlapper asserts that *Sabine Pilot* would subject an employer to civil liability for discharging an at-will employee when the employee refuses to perform a *legal* act, simply because the employee questions or seeks to investigate its legality. Such a holding would enlarge the exception recognized in *Sabine Pilot.* Consider, for example, the following scenario: An employer spends thousands of dollars obtaining a legal opinion attesting to the lawfulness of a particular act the employer wants accomplished. After receiving the opinion, the employer proceeds to ask one of her employees to complete the task. The employee, however, refuses to comply with the employer's request until the employee herself has had an opportunity to investigate the legality of the act. According to Schlapper, as long as the employee is making a "good faith" attempt to find out if the requested act is legal, she cannot be fired, or, if she is fired, can recover damages for wrongful discharge.

The public policy behind the *Sabine Pilot* exception is to deter the violation of criminal laws. *See Sabine Pilot,* 687 S.W.2d at 735. Question two, however, goes beyond merely deterring crime. *Sabine Pilot* designedly created a "narrow" exception to the employment-at-will doctrine to prohibit the discharge of an employee for the sole reason that the employee refused to perform an *illegal* act. *Sabine Pilot,* 687 S.W.2d at 735. Because question two would impose liability on an employer who fires an employee for refusing to perform (or even for investigating) a *legal* act, it goes beyond this exception and could conceivably result in "employee interference with legitimate interests of responsible, law-abiding employers in making ordinary managerial decisions." *See Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 732 (Tex.1990) (Doggett, J., concurring).

Furthermore, recognizing an exception to the employment at-will doctrine for discharging an at-will employee when the employee refuses to perform a legal act before assuring herself of the act's lawfulness could create a plethora of additional legal and factual issues not contemplated by *Sabine Pilot.* For example, adopting such an exception would inevitably require a determination of what constitutes a reasonable course and duration of the employee's investigation: What is a reasonable amount of time to investigate the action's legality? What if the person that the employee seeks to contact is on vacation or otherwise unavailable? Is a good-faith *doubt* in the legality of the action sufficient, or must the employee affirmatively hold a good-faith belief that the action is illegal? Is good faith determined by a subjective or objective standard, or by some combination of the two? What is a reasonable manner of investigation? Is an off-the-cuff inquiry to the employer sufficient? Does the employee have the right to call an attorney to research the issue? If so, does the employee have to call the company's attorney or can he call another attorney? Who must pay the attorney's fees? These complexities and practical difficulties, while not insurmountable, make it even more evident that question two goes beyond the bright-line rule created in *Sabine Pilot.*

We express no disagreement with the motive behind the submission of question two, nor do we deprecate the worthiness of the cause of action it represents. Irrespective of the merits of such a right of action, however,

3.  The creation and forwarding of the invoice, though dishonorable at best, appears not to be "illegal" in the sense of giving rise to criminal penalties. Sections 108.05 and 108.06 of the Alcoholic Beverage Code seem to apply only to manufacturers and distributors of beer, and thus did not apply to either Ran Ken or Remy–Amerique. *See, e.g.,* Tex. Alco. Bev.Code Ann. § 1.04(17) (West 1995). Section 32.32 of the Penal Code likewise appears not to apply because all relevant persons at Remy–Amerique were aware that the true basis of the invoice was the cost of the Las Vegas trip; accordingly, Ran Ken apparently did not ask Schlapper to make a "materially false or misleading" statement to Remy–Amerique. The federal mail-fraud statute is inapplicable for essentially the same reason. Because of the jury's negative answer to question one, however, the actual illegality of either the act Schlapper was asked to perform or the act later performed by Ran Ken is not material to our decision.

the supreme court explicitly stated in *Sabine Pilot* that it was creating only a narrow exception to the employment-at-will doctrine. In light of that clearly expressed policy, we believe any expansion of *Sabine Pilot* must be made by the supreme court, not by an intermediate appellate court whose job it is to follow, as conscientiously as it can, the law as pronounced by the court of last resort. *See Maus v. National Living Centers, Inc.,* 633 S.W.2d 674, 675 (Tex.App.—Austin 1982, writ ref'd n.r.e.). As Justice Powers, writing for this Court, has stated:

> *Sabine Pilot* implies, without any doubt, that lower courts are not licensed in that opinion to modify the Supreme Court's earlier decision in [*East Line & R.R.R. Co v.*] *Scott*—that lower courts are not free to create additional exceptions analogous to the "very narrow exception" created in *Sabine Pilot* itself. The Court's emphasis on the narrowness of the new exception forecloses any reasonable inference that the precepts of the "at will doctrine" must give way when the advocates of *any* public policy may claim or even show that it is adversely affected by the doctrine.

*Jennings v. Minco Technology Labs, Inc.,* 765 S.W.2d 497, 500–01 (Tex.App.—Austin 1989, writ denied). While courts of appeals are often called on to recognize new exceptions to legal principles, we must be loath to ignore a deliberate and express position enunciated by a higher court. The exception to the employment-at-will doctrine recognized by the supreme court in *Sabine Pilot* falls into that category. *See Hancock v. Express One Int'l, Inc.,* 800 S.W.2d 634, 637 (Tex.App.—Dallas 1990, writ denied). Accordingly, we conclude it was error for the trial court to render judgment based on the jury's answer to question two. *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980) (improper submission of charge questions constitutes reversible error when harm is suffered by the opposing party). We sustain point of error one.

Having sustained Ran Ken's first point of error, we need not address its remaining points of error or Schlapper's second cross-point. We will, however, address Schlapper's first and third cross-points, which relate to her requested jury submission and the trial court's submission of the jury question relating to the *Sabine Pilot* cause of action.

■ In her first cross-point, Schlapper contends the trial court erred by failing to submit a jury question allowing Schlapper to recover if she was discharged solely for refusing to perform a legal act that she in good faith *believed* to be illegal. Specifically, Schlapper requested that the trial court expand the supreme court's holding in *Sabine Pilot* to include situations where an employee was fired for refusing to perform an act that was not in fact illegal, but which the employee believed in good faith to be illegal, irrespective of any inquiry or investigation. Such a doctrine would, however, require as much an expansion of *Sabine Pilot* as question two. As discussed above, we believe that is beyond our authority in the present circumstances. We overrule Schlapper's first cross-point.

In her third cross-point, Schlapper argues that the "sole reason" standard of causation submitted to the jury as part of question one is wrong. The trial court's submission of "sole reason" as the level of causation is based squarely on the supreme court's holding in *Sabine Pilot. See Sabine Pilot,* 687 S.W.2d at 735. From our foregoing discussion, it is apparent we have no authority to overrule the supreme court. Accordingly, we cannot say the trial court erred in submitting the jury questions with "sole reason" as the standard of causation. We overrule Schlapper's third cross-point.

### CONCLUSION

Having sustained Ran Ken's first point of error and overruled Schlapper's relevant cross-points, we hold that the trial court erroneously submitted question two, on which Ran Ken's liability was based. Accordingly, we reverse the judgment of trial court and render judgment that Schlapper take nothing.

KIDD, Justice, dissenting.

The dissenting opinion issued herein on October 30, 1997, is withdrawn, and the following is filed in lieu thereof.

The appellee Cindy Schlapper was ordered by her employer to perform a dishonest and fraudulent act. She was asked to prepare a "phony" invoice to bill a customer for goods and services that she and her employer both knew had never been delivered. She refused and was fired from a job that she had held for over six years. The majority reverses a jury verdict and trial-court judgment on the basis that these facts do not fit within the *Sabine Pilot* exception to the Texas employment-at-will doctrine. Because I believe that this case fits within the policy rationale, if not within the precise language of *Sabine Pilot,* I would uphold the jury verdict and judgment. Therefore, I respectfully dissent.

Although I do not strongly disagree with the factual recitation in the majority opinion, I do have a completely different viewpoint regarding the saliency of certain facts. The majority focuses almost exclusively on whether the requested action was illegal or not. It overlooks, even in the hypotheticals it posits, the fraud and dishonesty demanded by this employer of its employee.

Cindy Schlapper's job title was advertising director. She was ordered by her supervisor, a corporate officer, to prepare an invoice for printing table tents.[1] Knowing that no such table tents had been prepared for this particular customer, Remy–Amerique, Ms. Schlapper inquired about the purpose for the invoice. Without informing her that the "phony" invoice had already been discussed with Remy, her supervisor told Ms. Schlapper that the invoice would allow Ran Ken to be reimbursed for the Las Vegas trip-prize which had cost the company $630. However, Ms. Schlapper was instructed to make the invoice out in the uneven amount of $631.80 to make the invoice "look good, make it look real." Ms. Schlapper was even ordered to include some phony sales tax to make the

invoice look authentic. Recognizing that this whole transaction did not pass the "smell test," Ms. Schlapper expressed discomfort and refused to prepare the invoice.[2] After her supervisor called her a "bitch" and ordered her to take the matter up with the company vice-president, Ms. Schlapper's inquiry, which ultimately got her fired was, "Exactly what are the legalities of doing this?" The trial testimony reveals that at this point in time *both* Ran Ken and Remy thought this reimbursement violated the Alcoholic Beverage Code. Otherwise, there would have been no reason for preparing a phony invoice. It seems only as an afterthought that the defense lawyers for Ran Ken devised the defense used in this case: the invoice scheme did not *technically* violate the Code because Remy distributed hard liquor rather than beer.[3] I believe that by focusing so minutely on the ultimate question of "illegality" the majority narrows the *Sabine Pilot* exception. In *Sabine Pilot,* the employee was asked to perform an *affirmative act* that he *believed* to be *illegal.*[4] Here, the employee was asked to perform a *dishonest and fraudulent act* that at the time everyone connected with the scheme *believed* to be *illegal.*

I would follow as persuasive authority a case strikingly similar to ours, *Johnston v. Del Mar Distributing Co.,* 776 S.W.2d 768 (Tex.App.—Corpus Christi 1989, writ denied). In *Johnston,* the employee was instructed to package for shipment a semiautomatic weapon for delivery to a grocery store in Brownsville, Texas, and to label the contents of the package as "fishing gear." The employee was required to sign her name to the shipping documents and feared this *might* be a violation of either federal firearms or postal rules and regulations. The

---

1. "Table Tents" are the industry term for printed sales brochures placed on the bar or restaurant tables encouraging customers to buy food or drink.

2. Ms. Schlapper even explained to her supervisor that her advertising department did not prepare invoices and did not have invoice forms. This work was done by the bookkeeping department of Ran Ken.

3. Of course, the scheme had the potential to violate laws other than the Code. Although potential violations of the postal laws through mail fraud were discussed, possible sales tax violations were not, *i.e.,* whether it is illegal to collect a stated sales tax without remitting it to the State Comptroller's office.

4. Because *Sabine Pilot* was decided in the context of a summary judgment case, the Texas Supreme Court *assumed* the act to be illegal.

employee subsequently sought "advice" from the Bureau of Alcohol, Tobacco & Firearms. A few days after contacting the Bureau the employee was fired.

In overturning a summary judgment in favor of the employer, the Corpus Christi Court of Appeals held that the above facts fell within the *Sabine Pilot* exception even though the employee was discharged *before* refusing to perform the dishonest act.

I agree with the holding of the Corpus Christi court as follows:

We hold that since the law recognizes that it is against public policy to allow an employer to coerce its employee to commit a criminal act in furtherance of its own interest, then it is necessarily inferred that the same public policy *prohibits the discharge of an employee who in good faith attempts to find out if the act is illegal.* It is important to note that we are not creating a new exception to the employment-at-will doctrine.

*Johnston,* 776 S.W.2d at 771 (emphasis added). Based upon the holding in *Johnston,* I would affirm this case.

*Sabine Pilot* was decided over a decade ago. The Texas Supreme Court noted then that twenty-two jurisdictions had created exceptions to the employment-at-will doctrine over the preceding thirty years. *See Sabine Pilot,* 687 S.W.2d at 735 (Kilgarlin, J., concurring). Recognizing that the Texas exception announced in *Sabine Pilot* is a narrow one, I refuse to narrow it even further. Believing that this is exactly what the majority opinion does, I respectfully dissent.