26 P.3d 518

Sean CUMMINS and Deirdre Cummins, husband and wife, Plaintiffs–Appellees, Cross Appellants,

v.

MOLD–IN GRAPHIC SYSTEMS, an Arizona business; Michael J. Stevenson and Kathleen Stevenson, husband and wife, Defendants–Appellants, Cross Appellees.

No. 1 CA–CV 99–0559.

Court of Appeals of Arizona, Division 1, Department E.

June 5, 2001.

The Langerman Law Offices, P.A., By Amy G. Langerman, and Adrienne K. Wilson, Phoenix, Attorneys for Plaintiffs–Appellees/Cross Appellants.

Snell & Wilmer L.L.P., By Lonnie J. Williams, and Martha E. Gibbs, and Michelle L. Ray, Phoenix, Attorneys for Defendants–Appellants/Cross Appellees.

## OPINION

GARBARINO, Presiding Judge.

¶ 1 Mold–In Graphic Systems (MIGS) and Michael and Kathleen Stevenson, collectively referred to as the defendants, appeal from the trial court's denial of the defendants' motion for judgment as a matter of law[1] on Sean and Deirdre Cummins' claim for wrongful discharge under the public policy exception to the at-will employment doctrine. The plaintiffs cross appeal from the trial court's dismissal of their claims for intentional infliction of emotional distress and punitive damages. For the reasons that follow, we reverse the trial court's denial of the defendants' motion for judgment as a matter of law on the wrongful discharge claim, and we affirm its dismissal of the plaintiffs' claim for intentional infliction of emotional distress. Our resolution of these issues eliminates the need to address the plaintiffs' argument regarding their punitive damages claim.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 MIGS is a plastic products manufacturing company located in Clarkdale, Arizona. The Stevensons are the sole stockholders of MIGS, and Mike Stevenson is the CEO of the company. Mr. Cummins, who is blind, was hired by MIGS in September 1994. After a brief stint in the Art Department, Mr. Cummins was transferred to the Management Information Systems (MIS) Department, where he input data and performed network maintenance.

¶ 3 The plaintiffs contend that in the fall of 1995, Arthur Brault, a MIGS employee, told Mr. Cummins that Mike Stevenson wanted him to copy Bible study software onto Brault's computer system. Mr. Cummins refused to do so on the basis that it may constitute an illegal copying of software. Mr. Cummins advised his supervisor, Mel Smart, of the incident, and, according to Mr. Cummins, Mr. Smart agreed that it was an inappropriate request and advised him not to copy the software.

¶ 4 Shortly thereafter, Chris Eymann, a MIGS employee and the Stevensons' son-in-law, requested Mr. Cummins' assistance in copying Stevenson's Bible study software onto Brault's computer. Again, Mr. Cummins refused, explaining he did not believe such copying was appropriate under the copyright laws. The parties never addressed whether any licenses existed that would permit the software to be copied.

¶ 5 The plaintiffs assert that, over the course of the six to seven months following these two incidents, MIGS' employees and Mike Stevenson engaged in a course of conduct that amounted to intentional infliction of emotional distress and wrongful termination of Mr. Cummins. The plaintiffs complain, *inter alia*, that employees at MIGS began to shun Mr. Cummins, that management approved vacation time and then reversed its position, that Mr. Cummins' position was changed from that of a salaried employee to an hourly employee, that he was no longer allowed to accrue overtime, that Mike Stevenson openly chastised and rebuked him in an off-site Bible study, that his network security access was revoked, that his job description was changed to include activities that he could not perform, that management instituted a policy that Mr. Cummins perceived applied only to him, that he was given no meaningful work, that his hours were reduced, and that he was eventually terminated. By contrast, MIGS claimed that Mr. Cummins' termination was due to company downsizing.

¶ 6 The plaintiffs filed this lawsuit against the defendants, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, wrongful discharge in violation of public policy against handicap and religious discrimination, intentional infliction of emotional distress, and violation of the Arizona Civil Rights Act, Ariz.Rev.Stat. (A.R.S.) §§ 41–1461 to –1465.[2]

---

1. The defendants moved for a directed verdict, which is now known as a motion for judgment as a matter of law. Ariz. R. Civ. P. 50; *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 301, ¶ 3, 995 P.2d 735, 737 (App.1999).

2. The plaintiffs also asserted claims for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (1994 & Supp.1998), and section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (1994), and title VII of the Civil

¶ 7 The Stevensons and MIGS each moved for summary judgment. The trial court granted both the Stevensons and MIGS summary judgment on all of the plaintiffs' claims except for the intentional infliction of emotional distress claim, and entered judgment in accordance with these rulings.

¶ 8 Shortly before trial was set to begin, the plaintiffs asserted a claim against MIGS that Mr. Cummins had been wrongfully discharged in violation of public policy in retaliation for refusing to engage in what Mr. Cummins believed was an illegal activity— copying Bible study software. The day before trial, the trial court ruled that the plaintiffs could proceed upon both the intentional infliction of emotional distress and wrongful discharge claims. The defendants declined a continuance, and the case proceeded to a jury trial.

¶ 9 At the end of the plaintiffs' case-in-chief, the trial court granted the defendants' motion for judgment as a matter of law on the claim of intentional infliction of emotional distress. As to the wrongful termination claim, MIGS argued that the plaintiffs were required to show that copying the Bible study software was actually illegal, rather than demonstrating that Mr. Cummins harbored a good faith belief that it was illegal, and that the plaintiffs had not presented any evidence to demonstrate that copying the software would have been illegal. The trial court denied MIGS' motion for judgment as a matter of law on the wrongful discharge claim. MIGS renewed the motion at the close of all the evidence and it was again denied. The court did, however, grant MIGS' motion for judgment as a matter of law on the plaintiffs' claim for punitive damages.

¶ 10 The jury returned a verdict for the plaintiffs on the wrongful discharge claim and awarded them $185,000 in damages. The trial court entered judgment in accordance with the verdict. MIGS renewed its motion for judgment as a matter of law on the wrongful discharge claim, and the plaintiffs moved for a new trial on the intentional

infliction of emotional distress and punitive damages claims. The trial court denied both motions. MIGS timely filed a notice of appeal, and the plaintiffs timely filed a notice of cross appeal. We have jurisdiction over the appeal and cross appeal pursuant to A.R.S. sections 12–2101(B) and (F)(1) (1994).

## ISSUES

¶ 11 MIGS raises the following issues on appeal:

1. Must a plaintiff prove an act is actually illegal when establishing the *prima facie* elements of wrongful termination for refusing to engage in an unlawful act?

2. Can tort liability be imposed on an employer for wrongful termination of an at-will employee who refuses to engage in conduct proscribed by federal law?

¶ 12 The plaintiffs raise the following issues on cross appeal:

1. Did the trial court err by granting the defendants' request for judgment as a matter of law on the plaintiffs' claim for intentional infliction of emotional distress?

2. Did the trial court err by dismissing the plaintiffs' claim for punitive damages?

## DISCUSSION

I. *A Plaintiff May Assert a Wrongful Discharge Claim for Refusing to Engage in Unlawful Conduct When the Conduct is Proscribed by Federal Law.*

■ ¶ 13 We begin by addressing MIGS' contention that the plaintiffs' claim for wrongful discharge must fail because they failed to establish that Mr. Cummins had been requested to do anything that violates the laws of the State of Arizona. That is, if Mr. Cummins had been requested to engage in conduct that would have resulted in the violation of any law, it would have been a violation of *federal* law, which MIGS argues

Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1994 & Supp.1998), but they voluntarily dis-

missed those claims.

does not support a cause of action for wrongful termination in violation of *Arizona's* public policy. Therefore, MIGS argues, the plaintiffs' claim is not covered by Arizona's common law tort of wrongful discharge. If we determine that a violation of a federal law cannot supply a basis for recovery under the public policy/illegal act exception to the at-will employment doctrine, the plaintiffs would have failed to state a legally cognizable claim. We review this issue de novo because this is purely a legal question. *State ex rel. Miller v. Superior Court,* 189 Ariz. 228, 230, 941 P.2d 240, 242 (App.1997).

¶ 14 In *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985), the Arizona Supreme Court recognized that Arizona has adopted the American common law employment-at-will doctrine that initially gave employers unfettered discretion to terminate employees for any reason. *Id.* at 375–76, 710 P.2d at 1030–31 (citing *Dover Copper Mining Co. v. Doenges,* 40 Ariz. 349, 357, 12 P.2d 288, 291–92 (1932)). Recognizing the trend of other jurisdictions in moving away from the rigid application of the at–will doctrine, Arizona courts have adopted a public policy exception to the at-will doctrine. *Id.* at 378, 710 P.2d at 1033. The public policy of Arizona is that an at-will employee can be discharged for good cause or for no cause, but he or she cannot be discharged for bad cause. *Id.* An at-will employee who is discharged in violation of public policy is discharged for bad cause and therefore can recover damages.

¶ 15 Arizona recognizes four distinct categories of the public policy exception under which discharge from employment is actionable in tort: 1) refusing to engage in illegal conduct; 2) engaging in an important public obligation; 3) exercising a legal right or privilege; and 4) whistleblowing. *Wagner v. City of Globe,* 150 Ariz. 82, 88, 722 P.2d 250, 256 (1986). If MIGS' actions violate the public policy exception, its conduct falls under the first category, which prohibits terminating an employee for refusing to engage in illegal conduct. The plaintiffs claim that Mr. Cummins was terminated by MIGS because he refused to engage in the illegal copying of software, allegedly in violation of federal copyright laws.

¶ 16 The plaintiffs have failed to meet the necessary elements of the *prima facie* case. MIGS contends that *Wagenseller* stands for the proposition that the public policy of this state is embodied exclusively in Arizona's constitution, statutes, and court decisions. *See Wagenseller,* 147 Ariz. at 379, 710 P.2d at 1034.

¶ 17 MIGS would have us believe that the *Wagenseller* and *Wagner* courts were interested only in protecting an employee wrongfully terminated for having been loyal to the laws of the State of Arizona. We see no difference between the employee who is terminated for refusing to break the laws of our state and the employee who is terminated for refusing to violate our federal laws. The *Wagenseller* and *Wagner* courts recognized that the policy considerations underlying the adoption of the public policy/illegal act exception to at-will employment serve to prevent an employee from having to choose between the employee's continued employment and violating a law. *See Wagenseller,* 147 Ariz. at 379–80, 710 P.2d at 1034–35 ("To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer .... is patently contrary to the public welfare." (quoting *Petermann v. Int'l Bhd. of Teamsters, Local 396,* 174 Cal.App.2d 184, 344 P.2d 25 (1959))); *Wagner,* 150 Ariz. at 88, 722 P.2d at 256 (relying on *Petermann* in stating that "an employee should not be faced with the dilemma of violating the law or losing his job").

¶ 18 With this consideration in mind, it is only logical that the *source* of the law proscribing the requested conduct is immaterial, so long as that law applies to those within the territorial boundaries of Arizona and manifests "a 'clear mandate' of public policy." *Wagenseller,* 147 Ariz. at 377, 710 P.2d at 1032. The court in *Wagenseller* determined that "[t]here is no precise definition of the phrase ['clearly mandated public policy']. In general, it can be said that public policy concerns what is right and just and *what affects the citizens of the State collectively.*" *Id.* (emphasis added) (quoting *Pal-*

*mateer v. Int'l Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876, 878–79 (1981)). Laws that affect Arizona as a whole may provide the basis for a wrongful termination suit for refusing to engage in illegal conduct, regardless of whether the proscribed conduct is made unlawful by the state or the federal government.

¶ 19 Giving credence to MIGS' argument could frustrate the underlying policy of preventing employees from having to choose between continuing employment and violating the law, and would necessarily produce inconsistent results. Assume that a business owner in Arizona directs his employee to falsify information on federal tax documents—conduct proscribed by federal law. *See, e.g.,* I.R.C. § 7206 (1994) (criminalizing fraudulent and false statements made in tax returns). The employee refuses and is subsequently discharged for that reason. The employee would have no recourse against the employer. If, however, the request was to falsify Arizona tax documents—conduct proscribed by Arizona law, *see* A.R.S. § 42–1127(B) (1999) (addressing tax fraud and evasion)—the employee could recover. If the policy considerations expressed in *Wagenseller* and *Wagner* are to have meaning, the tort of wrongful discharge for refusing to engage in an illegal act must include any violations of federal as well as Arizona law. We hold that the tort of wrongful termination for refusing to engage in illegal conduct is actionable if the source evidences some clearly mandated public policy and that policy applies in Arizona, regardless of the policy's source.[3]

**II.** *Actual Illegality Must be Proven to Recover for Wrongful Termination.*

¶ 20 MIGS asserts that the plaintiffs failed to establish a *prima facie* case of public

policy/illegal act wrongful discharge when they failed to prove that the copying of the Bible study software was in fact illegal. The trial court recognized the plaintiffs' failure to establish actual illegality, but allowed the claim to be submitted to the jury on the basis of Mr. Cummins' good faith belief that the copying was illegal. MIGS argues that a good faith belief in illegality is insufficient, and that the plaintiffs' failure to establish actual illegality should have been fatal to their claim. MIGS challenges both the trial court's denial of its motion for judgment as a matter of law and the trial court's jury instruction permitting Mr. Cummins' good faith belief of illegality to serve as a basis for recovery under a theory of public policy/illegal act wrongful termination. As with the first issue, this is purely a legal question and our review is de novo. *Miller,* 189 Ariz. at 230, 941 P.2d at 242.

A. The Trial Court's Final Jury Instruction

¶ 21 Turning first to the jury instruction at issue, "we will affirm the trial court's [jury] instructions if, taken as a whole, they provide the jury with the *proper* rules for making its decision." *Miel v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 104, 109, 912 P.2d 1333, 1338 (App.1995) (emphasis added). When a jury instruction misstates the applicable standard of law, we will not overturn a verdict unless a specific objection was made to the instruction or unless the error in the instruction was fundamental. *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.,* 176 Ariz. 383, 386–87, 861 P.2d 668, 671–72 (App. 1993). Because MIGS preserved its objection to the final jury instruction, we need not engage in a fundamental error analysis.[4]

---

**3.** We recognize that the legislature has enacted a statutory cause of action for retaliatory discharge. *See* Arizona Employment Protection Act, A.R.S. §§ 23–1501 to –1502 (Supp.2000). Our opinion is limited to the common law tort for wrongful discharge, and we are not called upon to interpret the statute because this cause of action arose before the effective date of the statute.

**4.** The jury instruction at issue stated as follows:

Plaintiffs claim that Mold In Graphic Systems violated Arizona's public policy by discharging plaintiff, Sean Cummins[,] in retaliation for refusing to copy Bible Software. To establish a violation of public policy, plaintiffs must prove:

(1) Mold–In Graphic Systems terminated plaintiff, Sean Cummins, in retaliation for refusing to copy Bible software; and

(2) Plaintiffs suffered damages as a result of the discharge.

¶ 22 MIGS argues that the instruction was improper because it permitted the jury to consider Mr. Cummins' good faith belief in the illegality of copying the Bible study software, rather than requiring the plaintiffs to prove illegality-in-fact. We agree with MIGS' argument that a plaintiff attempting to recover for public policy/illegal act wrongful termination must prove that the requested act is illegal-in-fact. While this precise issue has not been addressed in Arizona, other courts have required proof of actual illegality when considering public policy/illegal act wrongful discharge claims.

¶ 23 A number of courts have specifically rejected the suggestion that an employee's good faith belief that the act requested was illegal is sufficient. *See, e.g., Paolella v. Browning–Ferris, Inc.*, 158 F.3d 183, 192–93 (3d Cir.1998) (requiring an employee to demonstrate that the conduct proposed by the employer was illegal under Delaware law); *Clark v. Modern Group Ltd.*, 9 F.3d 321, 323 (3d Cir.1993) (applying Pennsylvania law to find that the employee has the burden of showing actual illegality; reasonable belief of illegality is insufficient); *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo.1992) (holding that the employee must show that the employer directed the employee to perform an act that would violate a specific statute relating to public safety, health, or welfare, or that would undermine a clearly expressed public policy regarding the employee's basic responsibilities as a citizen or rights or privileges as a worker); *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 417 A.2d 505, 513–14 (1980) (affirming summary judgment in favor of the employer where the doctor-employee failed to show that objectionable medical research violated any law or "clear mandate of public policy"); *Nolte v. Gibbs Int'l, Inc.*, 335 S.C. 72, 515 S.E.2d 101, 103 (Ct.App.1999) (reversing summary judgment entered in favor of the employer because the employee presented sufficient evidence that the conduct requested by the employer was in fact illegal); *Ran Ken, Inc. v. Schlapper*, 963 S.W.2d 102, 106–07 (Tex.Ct. App.1998) (recognizing that an employee's good faith belief is insufficient; proof that the act could have resulted in criminal penalties is required); *Bott v.. Rockwell Int'l*, 80 Wash.App. 326, 908 P.2d 909, 913–14 (1996) (affirming the trial court's refusal to instruct the jury that the employee's good faith belief that certain conduct was illegal was sufficient to support the wrongful discharge claim).

¶ 24 The law presumes at-will employment may be terminated at any time by either party without cause or with "good" cause. *Wagenseller*, 147 Ariz. at 375, 710 P.2d at 1030. Because the wrongful discharge of an at-will employee can only be based on a public policy exception to the general rule, the exception should be construed narrowly. *See Bott*, 908 P.2d at 913. While public policy/illegal act wrongful discharge cases will prevent employees from having to choose between engaging in illegal conduct or losing their employment, allowing a good faith belief of illegality to suffice inappropriately invades the decision-making prerogative of the employer. *Ran Ken, Inc.*, 963 S.W.2d at 106.

¶ 25 Requiring a plaintiff to prove actual illegality serves yet another purpose. It also protects employers from suit based on an employee's mistaken, albeit good faith, belief that certain conduct is illegal. The rule requiring actual illegality has the effect of preventing "employee interference with legitimate interests of responsible, law-abiding employers in making ordinary managerial decisions." *Id.* (quoting *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 732 (Tex.1990) (Doggett, J. concurring)). When a judgment call exists regarding the legality or ethical propriety of a requested act, employers should not be precluded from making the call in the process of conducting their daily business.[5] *Nix v. Temple Univ.*, 408 Pa.Super. 369, 596 A.2d 1132, 1136 (1991).

---

*The law protects the act of opposing unlawful employment practices even if it is later determined that the conduct that plaintiff opposed was not illegal. Plaintiff must, however, prove that he had a good faith belief that what was being opposed was illegal.*

(Emphasis added.)

5. Concerns have also been raised about how a good faith belief would be determined-whether it should be an objective or subjective standard; whether the employee should be required to conduct an inquiry into the legality issue and, if so,

¶ 26 Allowing an employee to recover against an employer for a termination based on the good faith but mistaken belief that the employee had been requested to violate the law does not further those interests identified as needing protection. The good faith belief that his or her actions would be illegal is irrelevant. The proper inquiry is whether the requested conduct is, in fact, illegal. This standard satisfies the need to protect the state's interest in preventing criminal conduct, the employee's interest in not having to choose between engaging in illegal conduct and continued employment, and the employer's interest in the efficient administration of the business without the threat of a baseless suit.

¶ 27 Moreover, the cases relied upon by the plaintiffs to support their argument that an employee's good faith belief of illegality is sufficient are distinguishable from the instant case. Those cases all involve discharges in retaliation for whistleblowing or analogous anti-discrimination provisions under federal employment laws.[6] *See Murcott v. Best W. Int'l, Inc.,* 198 Ariz. 349, 356–57, ¶¶ 37–46, 9 P.3d 1088, 1095–96 (App.2000) (addressing a whistleblower situation); *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013 (11th Cir.1994) (addressing retaliatory discharge under title VII of the Civil Rights Act of 1964); *Malone v. Signal Processing Techs., Inc.,* 826 F.Supp. 370 (D.Colo.1993) (considering retaliatory discharge for complaining of discriminatory treatment under the Fair Labor Standards Act). A good faith belief element in whistleblowing and discrimination—based public policy wrongful discharge claims is appropriate because those cases encompass the additional element of encouraging the reporting of suspected unsafe or illegal activities detrimental to the public good. *Wagner,* 150 Ariz. at 89, 722 P.2d at 257 ("We believe that whistleblowing activity which serves a public purpose should be protected.

So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged."). The elimination of the good faith belief element in such cases would have a chilling effect on the overriding public interest in the reporting of questionable conduct.

¶ 28 Our decision here is consistent with *Wagenseller,* even though the supreme court made the statement that the plaintiff had properly stated a claim for wrongful discharge in violation of public policy regardless of the legality of the conduct at issue. The court's rationale was premised on the public policy embodied in the indecent exposure statute that protects a "citizen's social right" to "bodily privacy." *Wagenseller,* 147 Ariz. at 380, 710 P.2d at 1035; *see also Schlang v. Key Airlines, Inc.,* 794 F.Supp. 1493, 1508 (D.Nev.1992) (noting that *Wagenseller* held that "an employee may refuse to participate in activities that contravene a law's important public policy interest even if the activity does not technically violate the law"), *vacated in part on other grounds,* 158 F.R.D. 666 (D.Nev.1994). Here, the plaintiffs have not asserted that the requested conduct would have violated any clearly expressed public "policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.'" *Wagenseller,* 147 Ariz. at 380, 710 P.2d at 1035 (quoting *Palmateer,* 52 Ill.Dec. at 16, 421 N.E.2d at 879); *see also Martin Marietta Corp.,* 823 P.2d at 109 (stating that a plaintiff must show "that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or . . . right or privilege as a worker"). Rather, the plaintiffs rely *solely* on the argument

---

the level of that inquiry. *See, e.g., Ran Ken, Inc.,* 963 S.W.2d at 106.

6. Similarly, the Standard Civil Instruction from the 1997 version of the Revised Arizona Jury Instructions (RAJI) (Civil) that was relied upon by the plaintiffs to set forth a good faith belief component applies in whistleblowing claims. RAJI (Civil) 3d, Employment Law 9 (1997). In contrast, the Standard Civil Instruction relied upon by the defendants pertains to public policy/illegal act wrongful discharge cases and assumes that the unlawfulness of the requested act will be determined by the trial court or stipulated to by the parties before the matter is submitted to the jury. RAJI (Civil) 3d, Employment Law 8(c) (1997) & cmt.

that the copying would have violated copyright laws. The plaintiffs needed to establish the actual illegality of the requested conduct.

### B. The Denial of MIGS' Motions for Judgment as a Matter of Law

¶ 29 Having determined that the legal standard applied by the trial court was improper, we turn now to review de novo the trial court's denial of MIGS' initial and renewed motions for judgment as a matter of law. *Anderson v. Nissei ASB Mach. Co.,* 197 Ariz. 168, 172, ¶ 10, 3 P.3d 1088, 1092 (App.1999). Judgment should be granted if the facts presented in support of a claim "have so little probative value that reasonable people could not find for the claimant." *Id.* We view the evidence in the light most favorable to the nonmoving party. *Monaco,* 196 Ariz. at 302, ¶ 6, 995 P.2d at 738. In other words, we view the evidence in the light most favorable to the plaintiffs to determine whether the evidence adduced at trial was sufficient to establish the *prima facie* case of public policy/illegal act wrongful termination utilizing the proper standard enunciated above-actual illegality.

¶ 30 The plaintiffs assert they established a violation of copyright laws because (1) Mr. Cummins testified that he "didn't feel right about doing [the copying], that copyright laws were pretty specific that the ownership was only to the purchaser," and (2) MIGS never assured Mr. Cummins that it had a license for the copying. This testimony did not establish a violation of the copyright laws. The plaintiffs did not provide the trial court or the jury with testimony or authority that would support their claim that the act MIGS' requested that Mr. Cummins perform violated the copyright laws. The plaintiffs, who bore the burden of proof, also provided no evidence that copying the software would have violated the software license, no evidence of the scope of the software license, or that there was, in fact, a license. There is no evidence that MIGS asked Mr. Cummins to do anything that would constitute a copyright violation.

¶ 31 The plaintiffs mistakenly rely on the "adoptive admission" rule as creating an admission of illegality by MIGS. Rule 801(d)(2)(B) of the Arizona Rules of Evidence allows the silence of a party to be used as evidence, even if the answer would ordinarily have been hearsay, if the party against whom the statement is being used manifests "an adoption or belief in [the statement's] truth." Ariz. R. Evid. 801(d)(2)(B). The plaintiffs claim that the "[d]efendants' silence, when Mr. Cummins asked whether appropriate licenses existed for the software, constitutes an 'adoptive admission.'" When attempting to admit the statement of another as an adoptive admission using silence as the manifestation of adoption or belief, the proponent must show that the statement is one to which a reasonable person would respond, that the statement was heard and understood, that the person hearing the statement was capable of responding, and that the person failed to respond. *United States v. Hove,* 52 F.3d 233, 236–37 & n. 4 (9th Cir.1995) (applying the identical Rule 801(d)(2)(B) of the Federal Rules of Evidence to adoptive admissions by silence); *see also Ruth v. Rhodes,* 66 Ariz. 129, 134–35, 185 P.2d 304, 308 (1947) (outlining the common law rule governing adoptive admissions by silence); Fed.R.Evid. 801 advisory committee's note ("When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue.").

¶ 32 Here, the plaintiffs failed to prove that Mr. Cummins ever made a statement to which MIGS could reply, nor did the plaintiffs prove that MIGS manifested an adoption of or a belief in any statement Mr. Cummins may have made. Indeed, Mr. Cummins conceded at trial that he never asked whether it was legal to install the software. *See State v. Weigel,* 145 Ariz. 480, 481, 702 P.2d 709, 710 (App.1985) (concluding that the defendant's reply, "Yes, I know," *to the officer's statement* that the officer had "a solid case" against him, was the equivalent of an adoptive admission and admissible under Rule 801(d)(2)(B) of the Arizona Rules of Evidence). Rather, Mr. Cummins merely presumed that installing the software was illegal. MIGS' employees' failure to read Mr. Cummins' mind, to "alleviate Mr. Cummins' fears," and to affirmatively and voluntarily disclose whether the software was li-

censed, without so much as a request from Mr. Cummins, did not demonstrate an admission by MIGS that installing the software would have been illegal.

¶ 33 As the trial court recognized in ruling on the defendants' motion for judgment as a matter of law, there was "no proof ... that the conduct the employee refused would have actually been a violation of any law." Accordingly, the plaintiffs failed to establish their claim for public policy/illegal act wrongful discharge.

¶ 34 The plaintiffs were aware from the outset of trial that they might need to prove actual illegality. In fact, plaintiffs' counsel acknowledged during the second day of trial that, given the court's pending ruling on that issue, she had to "cover both bases" by being prepared to prove actual illegality and Mr. Cummins' good faith belief of illegality. The plaintiffs, however, failed to prove actual illegality. In light of our holding that proof of actual illegality is required, the wrongful discharge claim should not have been submitted to the jury and MIGS was entitled to judgment as a matter of law. *Shoen v. Shoen*, 191 Ariz. 64, 65, 952 P.2d 302, 303 (App.1997).

III. *The Trial Court Properly Granted the Defendants' Motion for Judgment as a Matter of Law on the Plaintiffs' Claim for Intentional Infliction of Emotional Distress.*

¶ 35 On cross appeal, the plaintiffs challenge the trial court's judgment as a matter of law in favor of the defendants on the plaintiffs' claim for intentional infliction of emotional distress. Viewing the facts and the inferences drawn therefrom in the light most favorable to the plaintiffs, *Monaco*, 196 Ariz. at 302, ¶ 6, 995 P.2d at 738, we will affirm the trial court's grant of judgment as a matter of law "even if the trial court has reached the right result for the wrong reason." *City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985).

¶ 36 The plaintiffs mainly focus on the trial court's "improper" reliance on *Paul v. Watchtower Bible & Tract Society of New York, Inc.*, 819 F.2d 875 (9th Cir.1987), in dismissing their emotional distress claim.

We do not find the plaintiffs' arguments or the trial court's untimely or improper reliance on *Watchtower* persuasive because we conclude that the trial court should have entered judgment as a matter of law for the defendants on the intentional infliction of emotional distress claim regardless of any citation to or reliance on *Watchtower*.

¶ 37 To state a claim for intentional infliction of emotional distress in Arizona, "[a] plaintiff must show that the defendant's acts were 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (App.1995) (quoting *Cluff v. Farmers Ins. Exch.*, 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969)). "The trial court must determine whether the acts complained of are sufficiently extreme and outrageous to state a claim for relief." *Id.* As noted in *Mintz*, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988)).

¶ 38 *Both Cox* and *Mintz* hold that even callous conduct toward an employee in the workplace cannot establish a claim for intentional infliction of emotional distress. In *Cox*, the employee was discharged on his first day back at work after a three-month absence for triple bypass heart surgery. 861 F.2d at 390–91. The employer also opposed the employee's application for disability and medical insurance benefits. *Id.* at 391. Notwithstanding, the Third Circuit affirmed a directed verdict for the employer on the intentional infliction of emotional distress claim. *Id.* at 396.

¶ 39 Similarly, in *Mintz*, this Court held that the employee had not alleged the type of extreme and outrageous conduct needed to support an intentional infliction of emotional distress claim, despite allegations that her employer had forced her to return to work after she had been "hospitalized for severe emotional ... problems," had hand-delivered

a letter to her in the hospital informing her that her job duties were being reassigned, and had failed to promote her for possible discriminatory or retaliatory reasons. 183 Ariz. at 552, 554, 905 P.2d at 561, 563.

¶ 40 Although the plaintiffs may have demonstrated that MIGS' conduct was unacceptable, MIGS' conduct did not rise to the level required to prove intentional infliction of emotional distress. When we view the plaintiffs' allegations in the light most favorable to them, the incidents that the plaintiffs allege—shunning, approval and then rejection of vacation, prohibition against accruing overtime, the indefinite "rebuke" by Mike Stevenson not expressly directed toward Mr. Cummins, the change in his network supervisory status, the changes in his job description and status, the lack of meaningful projects, his reduction in hours, and his termination—do not, as a matter of law, demonstrate the extreme and outrageous conduct necessary to establish intentional infliction of emotional distress under Arizona's strict standards. *See Mintz*, 183 Ariz. at 554, 905 P.2d at 563.

¶ 41 Most of the cases relied on by the plaintiffs in support of their contention that they have made an adequate showing of outrageous conduct were decided under title VII of the Civil Rights Act of 1964, not cases involving common law tort claims. *See, e.g., Fielder v. UAL Corp.*, 218 F.3d 973 (9th Cir.2000), *petition for cert. filed*, 69 U.S.L.W. 3619 (U.S. Mar. 7, 2001); *Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425 (8th Cir. 1998); *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473 (7th Cir.1996); *Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473 (6th Cir.1990). Title VII claims and common law intentional infliction of emotional distress claims have different legal standards. *See Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 135, 876 P.2d 1166, 1170 (App.1994) ("Title VII liability is much broader than common law tort liability."). We conclude that the "shunning" and other conduct allegedly directed toward Mr. Cummins does not, as a matter of law, rise to a level that is sufficient to state a claim for intentional infliction of emotional distress under Arizona law. *See Mintz*, 183 Ariz. at 554, 905 P.2d at 563. The trial court correctly granted judgment as a matter of law for the defendants on the plaintiffs' claim of intentional infliction of emotional distress.[7]

## CONCLUSION

¶ 42 We conclude that a plaintiff can assert a wrongful discharge claim when that plaintiff's termination is based on a refusal to engage in conduct that would be a violation of a federal law. We further conclude that in order to recover under this tort theory of liability, a plaintiff must prove the underlying requested act would have been illegal-in-fact. Finally, we determine that the trial court properly entered judgment as a matter of law in favor of the defendants on the plaintiffs' intentional infliction of emotional distress claim.

¶ 43 Accordingly, because the plaintiffs were on notice that they might have to prove illegality-in-fact and yet failed to do so, we reverse the trial court's denial of MIGS' motion for judgment as a matter of law, vacate the jury verdict and corresponding judgment, and remand to the trial court with directions to enter judgment in favor of MIGS on the plaintiffs' wrongful discharge claim. Further, we affirm the trial court's judgment for the defendants on the plaintiffs' claim for intentional infliction of emotional distress.

CONCURRING: RUDOLPH J. GERBER, Judge, and REBECCA WHITE BERCH, Judge.

---

7. Because we have reversed the judgment for the plaintiffs on their wrongful discharge claim and affirmed the trial court's entry of judgment for the defendants on the intentional infliction of emotional distress claim, we need not address the plaintiffs' argument that the trial court erred by dismissing their claim for punitive damages. The plaintiffs no longer have an underlying claim on which to base their punitive damages claim.